[No. 52100-0. En Banc. July 10, 1986.]

LUCIEN JOINETTE, ET AL, *Respondents*, v. LOCAL 20, THE HOTEL AND MOTEL RESTAURANT EMPLOYEES AND BARTENDERS UNION, ET AL, *Appellants*.

---

[9]RCW 42.30.

[10]*Ruddach v. Don Johnston Ford, Inc.*, 97 Wn.2d 277, 281, 644 P.2d 671 (1982).

*David B. Condon* and *Welch & Condon,* for appellants.

*Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* by *John R. Connelly, Jr.,* and *Jerome F. Mc-Carthy,* for respondents.

PEARSON, J.—This is a class action brought on behalf of numerous retired members of a local hotel, motel and restaurant employees union. These retirees had been promised that their annual dues either would be eliminated or reduced by 50 percent upon retirement, as long as they had been union members for 20 years and did not return to the industry after retirement. In 1981, the international convention of the union increased dues and made dues applicable to all retirees, regardless of what was provided by local bylaws. If dues are not paid, the retirees are stricken from union membership and divested of all union benefits. The Superior Court held that the retirees had a contractual right to union membership and benefits, and that the international union could not deny their rights by increasing union dues. The union local appealed to the Court of Appeals, which transferred the case pursuant to RAP 4.3. We affirm on different grounds.

I

The respondents in this case, retired members of Local 20 of the Hotel, Motel and Restaurant Employees and Bartenders Union (hereinafter Members), filed suit in Pierce County Superior Court on June 30, 1982, seeking damages and injunctive relief against the Hotel and Restaurant Employees International Union and its affiliate Local 20 (hereinafter International Union). The Members predicated their cause of action on breach of contract and promissory estoppel. This suit was certified as a class action pursuant to CR 23(b)(2) on October 22, 1982.

In 1976, Local 61 of the Hotel, Motel and Restaurant Employees Union merged with Local 711 of the Bartenders

358

Union to form Local 20. Prior to the merger agreement, article 5, section 18 of the bylaws of Local 61 specified that any person who had been a member of both the International Union and Local 61 for 20 consecutive years would have his dues remitted, provided the member ceased to work in the industry. That section further entitled these members to all of the rights and privileges of a dues paying member, provided they complied with all union laws.

Similarly, the bylaws of Local 711 specified that retired members who had been members of the union for 20 years and regularly paid their dues would be eligible for life membership privileges. The bylaws of Local 711 provided that these members would have to pay only 50 percent of the dues applicable to nonretired workers at the time of their retirement. The subsequent merger of Local 61 and Local 711 did not affect the special dues rates provided in the original bylaws of both local unions.

The bylaws of Local 20 also afforded its retired or disabled members reduced monthly dues. Specifically, article 14, section 3 provided that a nonworking member in good standing for 20 years in the union who reached the age of 65 years was required to pay only 50 percent of the regular monthly dues at the time of retirement.

The union members who retired under the bylaws of Locals 61, 711, and 20 were promised by local union officers prior to retirement that the above mentioned special dues rates provided in the respective local bylaws would not be increased. The promises made by the local union officers were verbal assurances and were never incorporated into the local bylaws.

In October 1981, at the international convention of the International Union, the delegates voted to amend the constitution of the International Union to increase dues. This dues increase, effective October 1, 1981, applied to all members of the International Union and Local 20, whether retired or working.

On October 13, 1981, the International Union, acting pursuant to the authority vested in its constitution and in

accordance with federal law, imposed a trusteeship on Local 20. Thereafter, the international trustee submitted a written recommendation to the president of the International Union requesting that the Members be exempted from the October 1981 dues increase. In response, the president authorized a $1.06 reduction in the dues obligation of retired members, but declined to rule the increases inapplicable. After attempting to exhaust intra–union remedies, the Members subsequently filed suit in superior court.

The trial court held that the oral representations made by local union officers to the Members constituted a binding promise which was breached by the implementation of the October 1, 1981 dues increase. Additionally and alternatively, the court held that the principles of promissory estoppel also applied, thus making the oral promises irrevocable and binding.[1] Accordingly, the court found that the Members were entitled to injunctive relief, a judgment for moneys charged by the International Union as increased dues, and reasonable attorney fees pursuant to a common fund theory of recovery.

## II

The first issue in this case is whether the Members' failure to exhaust internal union procedures required by the International Union's constitution can be excused on the ground that compliance with union procedure would have been futile. The International Union maintains that the Members prematurely abandoned efforts to exhaust union remedies prior to filing suit in superior court. We disagree.

As a general rule, a union member may not seek the assistance of a civil court to remedy an alleged wrongful act

---

[1]Because we hold that the Members are contractually entitled to life membership irrespective of the oral promises made to them upon retirement, we decline to address the issue of whether promissory estoppel applies in the context of a class action. Furthermore, although this suit could be characterized as one falling under the coverage of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 (1982), the parties themselves did not urge application of ERISA at trial or when this court raised the issue sua sponte on appeal. Accordingly, we decline to resolve the case on ERISA grounds.

by a union unless he has first exhausted the internal remedies provided in the constitution and bylaws of the union. *Rizzuto v. Western Conference of Teamsters Pension Trust,* 573 F.2d 552, 554 (9th Cir. 1977). This rule is not applicable, however, where the aggrieved union member has shown that pursuit of the intra–union remedies would be futile or inadequate. *Buzzard v. Local Lodge 1040 Int'l Ass'n of Machinists,* 480 F.2d 35, 41 (9th Cir. 1973).

■ Section 101(a)(4) of the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(4) (1982), authorizes labor unions to require aggrieved members to exhaust reasonable hearing procedures as a prerequisite to suit in civil court. *Rizzuto,* at 554. Section 411(a)(4) provides in pertinent part:

> No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency . . . *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four–month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof . . .

The constitution of the International Union expressly obligates the members to exhaust internal union remedies before resorting to the courts, and affords members a detailed internal grievance procedure. Nevertheless, the general requirement that the Members exhaust internal remedies before instituting court proceedings does not give the International Union authority to compel the Members to pursue internal remedies before resorting to the courts as the International Union claims. Rather, the exhaustion doctrine grants the court the *discretionary* power to stay proceedings if it determines that internal union procedures should be exhausted. *NLRB v. Industrial Union of Marine & Shipbuilding Workers,* 391 U.S. 418, 426, 20 L. Ed. 2d 706, 88 S. Ct. 1717 (1968).

As stated in *Giordani v. Upholsterers Int'l Union,* 403 F.2d 85 (2d Cir. 1968):

It is now beyond question that the statutory exhaustion requirement does not give the union authority to compel its members to pursue internal remedies before resorting to the courts, but rather preserves the discretionary exhaustion doctrine as it had been judicially dveloped [*sic*], subject to the four–month limitation.

*Giordani,* at 88 (citing *NLRB v. Industrial Union of Marine & Shipbuilding Workers, supra*). *See also Eisman v. Baltimore Regional Joint Bd. of Amalgamated Clothing Workers,* 352 F. Supp. 429 (D. Md. 1972), *aff'd,* 496 F.2d 1313 (4th Cir. 1974). Thus, the determination of whether an action should be dismissed because of failure to exhaust internal union remedies rests within the discretion of the trial judge.

The trial court concluded that the Members had attempted to resolve this dispute through union procedures, but the union failed to properly respond. According to the court, the International Union's failure to respond made any further attempts by the Members unnecessary and futile. This conclusion is supported by the facts, and the trial court's exercise of discretion clearly comports with the case law.

In any event, § 101(a)(4) of the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(4) (1982), indicates that a union member may institute legal proceedings if union procedures exceed 4 months. The Members filed a charge with the International Union on February 25, 1982, followed by the filing of a complaint on June 30, 1982. During the intervening 4 months, the Union gave no indication that it was taking action in response to the charge. Accordingly, the trial court's decision that further attempts were unnecessary comports with the act. Thus, we affirm the trial court's decision permitting the Members' civil action on the ground further attempts at exhausting union remedies were unnecessary and futile.

## III

The central issue in this case is whether the International Union breached a "contract of membership" with the

Members when the International Union increased the Members' dues after the local union had promised the Members that their dues would be fixed upon retirement. Independent research has revealed no case in which a court has entertained a breach of contract action based on the levy of increased dues. Thus, we write on a clean slate.

In analyzing this question, initially we recognize that an international union generally is empowered to levy a dues increase upon its members as long as the union complies with the procedural requirements of the Labor–Management Reporting and Disclosure Act of 1959, § 101(a)(3)(B), 29 U.S.C. § 411(a)(3)(B) (1982). The purpose of this section is to protect the rights of union members. *Ranes v. Office Employees Int'l Union, Local 28,* 317 F.2d 915, 918 (7th Cir. 1963). Nevertheless, nothing within § 411(a)(3)(B) itself supports the Members' theory that the International Union was contractually prohibited from levying a ' dues increase. The act clearly permits expulsion from membership for nonpayment of dues. 29 U.S.C. § 411(a)(5) (1982). *See Rothstein v. Manuti,* 235 F. Supp. 39 (S.D.N.Y. 1963).

The Members, however, argue that state common law of contract prohibits the International Union from levying a dues increase upon retired Members after the local union promised these Members that they would no longer be subject to dues increases. In addressing this contention, we look to § 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185 (1982).

▮ Initially, we note that the Members' reliance upon state common law is misplaced. Although a state court has concurrent jurisdiction over a breach of contract action under 29 U.S.C. § 185, *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 7 L. Ed. 2d 483, 82 S. Ct. 519 (1962), federal substantive law is controlling. *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 102, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962).

▮ Under federal law, a union constitution constitutes a "contract" within the meaning of § 185, *United Ass'n of Journeymen of Plumbing Indus. v. Local 334, United Ass'n*

*of Journeymen of Plumbing Indus.,* 452 U.S. 615, 622, 69 L. Ed. 2d 280, 101 S. Ct. 2546 (1981), and a union member may bring suit on the union constitution against the union itself. *Kinney v. International Bhd. of Elec. Workers,* 669 F.2d 1222, 1229 (9th Cir. 1981) (citing *Stelling v. International Bhd. of Elec. Workers, Local 1547,* 587 F.2d 1379 (9th Cir. 1978), *cert. denied,* 442 U.S. 944 (1979)). It is this court's duty to ascertain the terms of the Members' "contract" with the International Union and determine whether the latter is liable for its breach.

The local bylaw provisions upon which the Members rely empowered the locals' executive boards to grant a "life membership" to any member who had been a member of both the International Union and the local for 20 years prior to retirement from the industry. Upon attaining life membership, the Members' dues either were eliminated or reduced by 50 percent. Nevertheless, a life member was entitled to all rights, privileges and benefits of a dues paying member. Upon the Members' retirement, local union officers promised them that their dues would never be increased.

The International Union approved the local bylaws pursuant to article 11, section 2(b) of the international constitution. Furthermore, the International Union respected the promise that dues would not be increased, until 1981 when the constitution was amended at the international convention to increase dues and make dues applicable to all members, including the retired members in this case. The Members contend that the International Union's ratification of the pertinent bylaw provision, together with oral promises that dues would be fixed upon retirement, constitutes a binding contract enforceable against the International Union. Although we agree, we find it unnecessary to rely on the oral promises made by local union officers in reaching our conclusion. *But see United Shoe Workers v. Le Danne Footwear, Inc.,* 83 F. Supp. 714 (D. Mass. 1949) (oral agreement can be basis for action under 29 U.S.C. § 185).

The local bylaw provision which eliminated or reduced the annual dues of life members upon retirement constituted a contract between the Members and the local union. *See Trail v. International Bhd. of Teamsters*, 542 F.2d 961, 968 (6th Cir. 1976). Upon ratification of this provision, the International Union likewise became contractually bound. Nothing in the local bylaw provision indicated that the dues of life members would be fixed *unless* the International Union raised dues. The provision simply provides that dues of life members will be reduced or eliminated upon retirement.

█ The International Union, however, argues that it was empowered to raise dues pursuant to its constitution, and that the constitution supersedes any conflicting provision in local bylaws. Therefore, according to the International Union the constitutional amendment raising dues supersedes the local bylaw provision fixing dues. We disagree. Although this court should not rewrite a contract under the guise of interpretation, *Corbray v. Stevenson*, 98 Wn.2d 410, 415, 656 P.2d 473 (1982), where a contract is susceptible of more than one construction, this court should construe it against the drafter. *Jacoby v. Grays Harbor Chair & Mfg. Co.*, 77 Wn.2d 911, 918, 468 P.2d 666 (1970).

When the local bylaws are read together with the international constitution, we cannot escape the fact that the "contract" is subject to two reasonable interpretations. Under one interpretation, dues of retired life members are fixed upon retirement. Under the other interpretation, dues of retired life members are fixed upon retirement, subject to a constitutional amendment raising dues. We believe the conflict in interpretations should be resolved against the International Union. Before the general president approved the local bylaws, he could have demanded explicit language in the bylaws to the effect that life members were subject to future dues increases. Having failed to do so, the International Union cannot now complain.

█ In reaching our decision that the International Union breached a contract of membership with the Mem-

bers, we are not unaware of the strong public policy considerations militating in the Members' favor; namely, to avoid forfeiture of rights which a union member has earned through years of faithful membership. As stated in the Members' brief, many Members are on welfare or are otherwise destitute, and many reside in institutions without access to bank accounts or sufficient notice of dues increases. In the interests of justice, we cannot condone union activity that would divest these Members of union benefits by a dues increase they were not aware of or could not afford.

Recognizing the policy concerns in this case, we affirm the trial court's judgment. All Members who retired prior to the 1981 dues increase are entitled to the benefits of union membership under the terms upon which they attained life membership. Thus, although those Members whose dues were reduced by 50 percent still are required to remain current with their dues, union membership and consequent benefits cannot be divested for failure to pay increased dues, but rather only for failure to pay the dues as fixed prior to 1981.

## IV

The final issue in this case is whether the Members are entitled to reasonable attorney fees. The trial court held that the Members were entitled to recover reasonable attorney fees pursuant to a "common fund" theory, relying on state law. *See Seattle Sch. Dist. 1 v. State,* 90 Wn.2d 476, 542, 585 P.2d 71 (1978). As stated previously, however, we must look to federal law when reviewing a § 185 action. *See Sanabria v. International Longshoremen's Ass'n, Local 1575,* 597 F.2d 312, 314 (1st Cir. 1979).

The traditional federal rule, like Washington's, generally prohibits the award of attorney fees in the absence of statutory or contractual authorization. *Hall v. Cole,* 412 U.S. 1, 4, 36 L. Ed. 2d 702, 93 S. Ct. 1943 (1973). Nevertheless, "federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so

require." *Hall,* at 4–5. In its equitable power, a federal court may award counsel fees to a successful party if his opponent has acted "'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Hall,* at 5 (quoting 6 J. Moore, *Federal Practice* ¶ 54.77[2], at 1709 (2d ed. 1972)). In this case, neither the union "contract" nor § 185 authorizes an award of attorney fees. Likewise, although we find it reprehensible that the International Union would deny union membership to these loyal Members, we are not prepared to hold that the International Union has acted in bad faith.

However, a federal court also may award fees where "plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" *Hall,* at 5 (quoting *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 393–94, 24 L. Ed. 2d 593, 90 S. Ct. 616 (1970)). According to the Supreme Court, "[t]his exception has its origins in the 'common fund' cases, which have traditionally awarded attorneys' fees to the successful plaintiff when his representative action creates or traces a 'common fund,' the economic benefit of which is shared by all members of the class." *Hall,* at 5 n.7. Under the common fund theory, fees are awarded *out of the fund* created by the plaintiff. *But see Mills,* at 392 (the fact that suit has not produced monetary recovery does not preclude an award of fees).

Notwithstanding the general reluctance of federal courts to award fees under the common benefit rationale in a § 185 action, there is support in federal law for its application. *See, e.g., Karahalios v. Defense Language Inst.,* 613 F. Supp. 440 (N.D. Cal. 1984) (applying common benefit theory in a "fair representation" suit against union pursuant to § 185). Regardless, much of the rationale appearing in *Hall v. Cole, supra,* a suit under § 102 of the Labor–Management Reporting and Disclosure Act of 1959, applies with equal force to a suit under § 301 of the Labor Management Relations Act, 1947.

■ In *Hall v. Cole, supra,* a union member successfully sued his union for violating his right to free speech as secured by 29 U.S.C. § 411(a)(2). The Court reasoned that the common benefit theory applied to a § 411 suit because: (1) failure to award fees would unjustly enrich the class benefiting from the plaintiff's efforts, *Hall,* at 6; and (2) an award of fees would further congressional policy of eliminating the abuse of union members by their union. *Hall,* at 7–8. As noted by the Court:

> "Not to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose. It is difficult for individual members of labor unions to stand up and fight those who are in charge. The latter have the treasury of the union at their command and the paid union counsel at their beck and call while the member is on his own. . . . An individual union member could not carry such a heavy financial burden. Without counsel fees the grant of federal jurisdiction is but a gesture for few union members could avail themselves of it."

*Hall,* at 13 (quoting *Cole v. Hall,* 462 F.2d 777, 780–81 (2d Cir. 1972)).

In our opinion, the reasoning of the Supreme Court in *Hall v. Cole, supra,* is equally persuasive in the action under § 185. In this case, the Members filed suit against the International Union to protect the rights and privileges inuring to life members. By prevailing, the Members protected life membership status for the benefit of a closely defined class—retired life members of the union. An award of attorney fees in this case not only prevents the unjust enrichment of other retired members, but also furthers congressional policy of eliminating abuse of union members by their union. Accordingly, we remand for the trial court's determination of reasonable attorney fees to the Members for trial and appeal.

DOLLIVER, C.J., UTTER, BRACHTENBACH, DORE, GOODLOE, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.

ANDERSEN, J., concurs in the result.