[No. 55257–6. En Banc. April 6, 1989.]

LOCAL 112, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, *Petitioner,* v. VICTOR BRAY, ET AL, *Respondents.*

*Critchlow & Williams,* by *David E. Williams* and *Robert D. Merriman,* for petitioner.

*Pat Cockrill* (of *Hovis, Cockrill, Weaver & Bjur*), for respondents Bray and Bort.

*John S. Biggs,* for respondents Purczynski and Scott.

ANDERSEN, J.—This is a union discipline case.

Local Union 112, International Brotherhood of Electrical Workers (IBEW), AFL–CIO, (hereinafter the Local), fined several of its members for violating its rules, primarily its rule against working on nonunion jobs. The fines assessed against the four union members who are parties to this appeal are as follows:

Victor Bray, $8,416, reduced to $4,208 on certain conditions;
Robert Bort, $8,416, reduced to $4,208 on certain conditions;
Joseph Purczynski, $12,624, reduced to $6,312 on certain conditions; and
Jimmie M. Scott, $4,000, with $2,000 suspended on certain conditions.

The IBEW constitution[1] includes a list of 19 offenses for which a member may be penalized,[2] then concludes:

Any member convicted of any one or more of the above–named offenses may be assessed or suspended, or both, or expelled.

The constitution contains no provision for the enforcement of assessments or fines in a court of law. Rather, all assessments are charged "against the member as regular dues and must be paid within the time required to protect the member's continuous good standing and benefits."[3] The constitution also provides that any member having past due

---

[1]IBEW *Constitution and Rules for Local Unions and Councils* under its jurisdiction, as amended September 1982.

[2]IBEW Const. art. 27, § 1.

[3]IBEW Const. art. 20, § 2.

indebtedness to the union for assessments "shall stand suspended" and generally cannot be reinstated until they have been paid.[4] The bylaws of the Local contain nothing pertinent to the issue before us.

On March 19, 1985, the Local filed a suit in the Superior Court for Yakima County seeking to recover from its four aforesaid members the sum of the reduced assessments noted, plus 12 percent interest from June 2, 1984, except in the case of member Scott against whom interest was sought from November 5, 1983.

Answers and counterclaims were filed by union members Purczynski and Scott, and apparently also by members Bray and Bort.[5]

The Superior Court referred the case to an arbitrator who, after hearings, held for the union members and dismissed the complaint against them. The parties agreed that the counterclaims would be referred back to the Superior Court. The Local then requested a trial de novo in the Superior Court. Motions for summary judgment were thereafter filed by the four union members and were ultimately granted by the Superior Court. The members' counterclaims were not ruled on by the trial court but were ordered preserved for trial. The Superior Court also ruled that "[f]or purposes of RAP 2.2(d) the Court finds that there is no just reason for delay and this order shall constitute a final judgment of dismissal" of the Local's claims against the four union member defendants. Attorneys' fees and costs were awarded to the members.[6]

---

[4]IBEW Const. art. 23, § 3.

[5]The responsive pleadings of members Bray and Bort to the Local's complaint are not a part of the appellate record. The Local's response to counterclaims, which is in the record, however, refers to counterclaims by Bray and Bort.

[6]RCW 4.84.250; RCW 4.84.270; MAR 7.3.

The Local appealed and the Court of Appeals affirmed by an unpublished opinion.[7] That court granted attorneys' fees on appeal to union members Bray and Bort,[8] but not to union members Purczynski and Scott.[9]

We granted the Local's petition for discretionary review.[10] One issue is presented.

## ISSUE

May fines assessed by a union local against certain of its members be judicially enforced by obtaining a civil judgment against the union members in state court?

## DECISION

CONCLUSION. Yes, but only if specific authorization therefor is granted by the union's constitution or governing rules adopted pursuant thereto. There was no such authorization in this case.

 It is the law of this state that "[t]he constitution of a labor organization and the rules adopted pursuant thereto form a contract between the association, on the one hand, and its members, on the other."[11] This is also the prevailing view in other courts, both state and federal.[12] In

---

[7]*Local 112, Int'l Bhd. of Elec. Workers v. Bray*, 51 Wn. App. 1029 (1988).

[8]RCW 4.84.290.

[9]The provisions of RAP 18.1(a) and (c) requiring the timely service and filing of an affidavit for attorneys' fees were not complied with by Mr. Purczynski and Mr. Scott.

[10]RAP 2.3.

[11]*United Glass Workers' Local 188 v. Seitz*, 65 Wn.2d 640, 641, 399 P.2d 74, 13 A.L.R.3d 1000 (1965). *See Cox v. United Bhd. of Carpenters*, 190 Wash. 511, 69 P.2d 148 (1937); *Joinette v. Local 20, Hotel & Motel Restaurant Employees & Bartenders Union*, 106 Wn.2d 355, 362–63, 722 P.2d 83 (1986).

[12]*NLRB v. Allis–Chalmers Mfg. Co.*, 388 U.S. 175, 182, 18 L. Ed. 2d 1123, 87 S. Ct. 2001, *reh'g denied*, 389 U.S. 892 (1967); *International Ass'n of Machinists v. Gonzales*, 356 U.S. 617, 618, 2 L. Ed. 2d 1018, 78 S. Ct. 923, *reh'g denied*, 357 U.S. 944 (1958); *NLRB v. Boeing Co.*, 412 U.S. 67, 75, 36 L. Ed. 2d 752, 759, 93 S. Ct. 1952 (1973).

this regard, "'[t]he courts' role is but to enforce the contract.'"[13]

After analyzing pertinent federal labor statutes, and applying the foregoing contract theory, the United States Supreme Court concluded that "[a] union rule, duly adopted and not the arbitrary fiat of a union officer, forbidding the crossing of a picket line during a strike was therefore enforceable against voluntary union members by expulsion or a reasonable fine."[14] The Supreme Court also concluded that "[u]nless the rule or its enforcement impinges on some policy of the federal labor law, the regulation of the relationship between union and employee is *a contractual matter governed by local law*." (Italics ours.)[15]

The law is now "well–settled that a labor union may impose monetary fines upon its members to enforce compliance with its valid rules or to penalize noncompliance, where such penalties are provided for by the constitution or governing rules of the organization, and the offending member is accorded 'due process' in the union proceedings."[16] Most of the cases dealing with this subject are state cases.[17] Our review of the many cases cited in an extensive annotation on the subject,[18] which includes cases from this state,[19] demonstrates that the foregoing principle is almost uniformly applied with the results in each case varying only

[13]*Allis–Chalmers,* at 182, quoting Summers, *The Law of Union Discipline: What the Courts Do in Fact,* 70 Yale L.J. 175, 180 (1960).

[14]*Scofield v. NLRB,* 394 U.S. 423, 428, 22 L. Ed. 2d 385, 89 S. Ct. 1154 (1969).

[15]*Scofield,* 394 U.S. at 426 n.3. *See Boeing,* 412 U.S. at 75–76.

[16]Annot., *Right of Labor Union To Enforce in the Courts Fine Validly Imposed Upon Member,* 13 A.L.R.3d 1004, 1004–05 (1967).

[17]See footnote 16.

[18]See footnote 16.

[19]*United Glass Workers' Local 188 v. Seitz, supra; Retail Clerks Local 629 v. Christiansen,* 67 Wn.2d 29, 406 P.2d 327 (1965).

as required by the contract law of the state in whose courts the case was filed, or by the language of the union constitution which is before the court and the facts of the particular case.

■ The leading case in our state is *United Glass Workers' Local 188 v. Seitz,* 65 Wn.2d 640, 399 P.2d 74, 13 A.L.R.3d 1000 (1965). *Seitz* fully accords with the foregoing principles, while making it clear that "*the mode of discipline prescribed by the union's organic law must be followed.*" (Italics ours.) *Seitz,* at 641. This is a recognition of the labor law principle that "[a] union's constitution and bylaws are the measure of the authority conferred upon the organization to discipline, suspend, or expel its members."[20] In affirming a summary judgment dismissing a union's suit on a fine assessed by it against one of its own members, the late Justice Hugh Rosellini, writing for the court in *Seitz,* declared the law as follows:

> The constitution of the plaintiff union provides for the suspension or expulsion of a member who fails to pay a fine assessed against him. The plaintiff has pointed to no provision in the constitution and no facts outside it which would tend to rebut the presumption that the remedy provided in the constitution was meant to be exclusive. This is the mode of discipline available to the plaintiff, under its constitution, and it was evidently considered adequate when that constitution was adopted. In any event, it is the only mode to which the defendant member agreed to submit when he joined the union.

*Seitz,* at 642.

*Seitz* is directly in point. Here, as in *Seitz,* the union's constitution provides for the suspension or expulsion of a member who fails to pay a fine assessed by the Local against that member. Here, also as in *Seitz,* the Local did not seek suspension or expulsion of its members but instead brought suit in state court to convert the Local's fines into civil money judgments against its members. Here, again as in *Seitz,* the union constitution and bylaws contain

---

[20]48 Am. Jur. 2d *Labor and Labor Relations* § 378, at 291 (1979).

"no provision for recovery of a fine in a court of law."[21] It follows that since the Local's complaint against its members in this case sought to do precisely what *Seitz* held a union had no authority to do without specific authorization in the constitution or bylaws, a summary judgment dismissing the Local's complaint was properly granted to the union members.[22]

We decline to overrule the holding of *Seitz* that a union cannot convert a fine imposed on one of its members in a union disciplinary proceeding into a civil judgment against the member in a state court unless the union constitution, or governing rules adopted pursuant thereto, specifically authorizes it to do so. It is only fair to union members that if a union–assessed fine can be converted into a civil money judgment against them, which, of course, would be enforceable by garnishment of the members' wages or attachment of the members' property, that the members be made aware of it by the union constitution or bylaws. Our holding is also fair to unions, because they can enforce union–imposed fines against their members in state court if they simply amend their constitutions and/or bylaws to so authorize. Some unions have done this though others have not;[23] that is entirely up to the membership of the particular union. When Justice Rosellini wrote *Seitz* for this court over 20 years ago, he made it clear to one and all what had to be done in this regard and why.

The Local also argues that *Seitz* has been superseded by our recent opinion in *Joinette v. Local 20, Hotel & Motel Restaurant Employees & Bartenders Union*, 106 Wn.2d 355, 722 P.2d 83 (1986). We disagree.

---

[21]*Seitz*, 65 Wn.2d at 642.

[22]CR 56.

[23]*See* Wellington, *Union Fines and Workers' Rights*, 85 Yale L.J. 1022, 1054 n.168 (1976).

As *Joinette* pointed out, that case concerned a suit brought in the superior court in accordance with the concurrent jurisdiction provisions[24] of section 301 of the Labor Management Relations Act, 1947, (LMRA), 29 U.S.C. § 185 (1982). In *Joinette,* we simply acknowledged the obvious, that much labor law is governed by federal statute, and that when deciding an issue covered by federal statute (where we have the jurisdiction to do so) "substantive principles of federal labor law must be paramount in the area covered by the statute."[25] The case before us is simply a suit on an indebtedness[26] and does not purport to be a section 301 case.[27]

Furthermore, in this case, unlike *Joinette,* we are not confronted with a situation where "incompatible doctrines of local law must give way to principles of federal labor law."[28] As set forth above, in cases such as this where a union sues in state court to collect union–imposed assessments or fines, according to the United States Supreme Court, this is a "'federally unentered enclave' open to state law" and governed by local contract law.[29]

Accordingly, we hold that the dismissal of the Local's suit against its members by the arbitrator, which was affirmed by the Superior Court and the Court of Appeals, was proper.

---

[24]*Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 7 L. Ed. 2d 483, 82 S. Ct. 519 (1962).

[25]*Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962).

[26]The Local's "Complaint" filed against some of its members alleges that "each defendant *is indebted* to the plaintiff". (Italics ours.) Clerk's Papers, at 167.

[27]*See Local Lodge 1297, Int'l Ass'n of Machinists v. Allen,* 22 Ohio St. 3d 228, 490 N.E.2d 865 (1986).

[28]*Lucas Flour,* 369 U.S. at 102.

[29]*Scofield,* 394 U.S. at 426 n.3.

Finally, with respect to attorneys' fees in this court, the only attorneys' fee affidavit filed in this court was filed on behalf of union members Bray and Bort, and it was not filed until after oral arguments herein.[30] It was thus too late to be effectively replied to or answered by counsel for the Local.[31] The requirements of RAP 18.1 not having been complied with or waived,[32] the union members are not entitled to attorneys' fees and expenses in this court.[33]

Affirmed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, PEARSON, and DURHAM, JJ., concur.

DORE, J., concurs in the result.

Reconsideration denied June 1, 1989.

---

[30]RAP 18.1 provides that if applicable law grants a party the right to recover reasonable attorneys' fees or expenses on review, the party should request same as provided in the rule. RAP 18.1(a). The rule proceeds to specifically require that "*[s]even days prior to oral argument,* the party should serve and file an affidavit in the appellate court detailing the expenses incurred and the services performed by counsel." (Italics ours.) RAP 18.1(c). The affidavit of mailing, and the accompanying attorneys' fee affidavit by counsel for Mr. Bray and Mr. Bort, were mailed to the Clerk of the Supreme Court on November 14, 1988, just 2 days before oral argument. The affidavit of mailing recites that a copy was also *mailed* to opposing counsel on that same date. The affidavit was not received and filed by our Clerk until November 16, 1988, at 3:34 p.m. This was *after* the 1:30 p.m. oral arguments on the case in this court had been concluded. Since opposing counsel had to journey from Yakima to Olympia for the oral arguments, it is questionable whether he would have even received the affidavit, let alone had any real chance to respond with an opposing affidavit.

[31]*Donovick v. Seattle–First Nat'l Bank,* 111 Wn.2d 413, 418, 757 P.2d 1378 (1988); *Lindsay Credit Corp. v. Skarperud,* 33 Wn. App. 766, 773, 657 P.2d 804 (1983).

[32]*See Donovick,* at 418.

[33]*Glasgow v. Georgia–Pacific Corp.,* 103 Wn.2d 401, 408, 693 P.2d 708 (1985); *Tommy P. v. Board of Cy. Comm'rs,* 97 Wn.2d 385, 401, 645 P.2d 697 (1982).