[No. 14764-5-II.   Division Two.   June 7, 1993.]

ROBIN BARTLEY HILL, *Respondent,* v. J.C. PENNEY, INC., *Appellant.*

226

*Thomas A. Lemly* and *Davis Wright Tremaine,* for appellant.

*Richard D. Smith* and *Smith & Jordan,* for respondent.

SEINFELD, J. — J.C. Penney, Inc., appeals a superior court judgment against it for the wrongful discharge of Robin Bartley Hill, arguing that the trial court lacked jurisdiction; that Hill did not have a contractual right to be fired only for cause; that Hill was fired for cause; and that Hill failed to mitigate her damages. Hill cross-appeals, challenging a summary judgment dismissing several causes of action related to her discharge. We affirm the summary judgment in J.C. Penney's favor and reverse Hill's judgment against Penney.

Penney hired Hill as a temporary sales associate at its Tacoma Mall store on November 8, 1983. Hill later became a regular sales associate. Shortly after beginning work, Hill joined the union representing Penney employees. The collective bargaining agreement (CBA) between Penney and its employees provided that employees would be subject to discharge only for good cause and that violation of store rules constituted good cause. The CBA expired on May 31, 1985; a

successor agreement did not become effective until October 23, 1985.

Penney terminated Hill's employment on June 7, 1985, stating as its reason that Hill "was observed allowing removal of merchandise, which was the property of the Company, for which there was no payment or receipt of exchangeable merchandise." In a pretermination interview, Penney's security manager described three separate dates when security staff made these observations.[1]

When Penney hired Hill, she received an "Associate Handbook" describing the company's sales and customer philosophy and store safety policy. The handbook also contained a summary of benefits and customer services, a code for dress and behavior, and lists of rules under three subheads: "General Information", "Rules We Work With", and "Sales Procedure Rules". Three of the "Rules We Work With" stated that violation "will result in" or is "cause for dismissal"; the other rules did not state consequences for violation. The handbook did not explain or promise any discharge, disciplinary, promotion, or evaluation procedures.

A removable form on the back page of the handbook referred to the booklet as "Store Rules and Regulations" and required compliance with the rules. Hill signed such a form, indicating she received the handbook, understood the rules and acknowledged that she could "be dismissed for infraction of any of these rules." Hill also attended an orientation at which store personnel reviewed the handbook with new employees and provided initial training.

The sales procedure rules found in the handbook were also posted on an employee bulletin board, with the notation that "Infraction of Any One of Them is Sufficient Cause for Immediate Dismissal." Sales procedure rule 1 stated, in part: "No merchandise is to be sold for less or more than its marked retail price", and rule 2 provided, in part: "Each sale must be rung on the cash register [or] . . . [R]ecorded on the proper

---

[1]Hill denied any wrongdoing and presented evidence to disprove Penney's allegations. The trial court concluded Hill committed no misconduct and that Penney did not reasonably investigate. We do not reach these issues in our decision.

sales slip at the time of the transaction. . . . The correct sales receipt must be given to the customer, placed in or attached to the package." Penney later stated that it fired Hill for violations of rules 1 and 2.

In addition to the handbook, Penney also distributed a personnel procedures manual to management only. The manual contained guidelines for discharge but also stated that the guidelines were not binding or contractual. Hill never saw the manual while an employee.

In early 1985, Hill informed Penney that she planned to quit. Steve Gering, then acting as personnel manager of the Tacoma Mall store, told Hill that she was a good employee, that he did not want her to leave, and that she would be receiving a raise soon. Shortly thereafter, Gering approved and Hill received an unscheduled merit raise of $1.05 per hour to $5 per hour. While working at Penney, Hill received a job offer from a different company. She declined, but did not inform Penney of the other offer.

Hill filed suit against Penney on July 22, 1986, stating claims for wrongful discharge based on implied contract to terminate only for cause, outrage, bad faith termination, defamation, false light invasion of privacy, termination violating public policy, and termination violating due process. Penney twice petitioned for removal of the action to federal district court, arguing that the federal court had jurisdiction because resolution of Hill's claims would involve interpretation of the CBA. Hill moved to remand, asserting that her complaint did not allege a violation of the CBA. Each time the federal court remanded to the Pierce County Superior Court. In its order granting Penney partial summary judgment, the Superior Court dismissed all of Hill's claims except her implied contract claim.

Following a trial to the court, the trial judge awarded Hill $75,000 in damages plus attorney fees and costs for a total judgment of $89,257. Penney appeals.

## JURISDICTION AND PREEMPTION

The trial court based its determination that Hill had a right to be discharged only for cause on the provisions of the

230

expired CBA. Penney argues that federal labor law pre-empts state law with regard to a possible CBA claim and that the trial court lacked subject matter jurisdiction to consider a breach of contract claim based on an expired CBA.

Federal law can preempt state labor law and deny state court jurisdiction under three theories, more completely explained below: (1) section 301(a) of the Labor Management Relations Act, 1947 (LMRA), currently codified at 29 U.S.C. § 185(a); (2) the *Garmon* doctrine, *San Diego Bldg. Trades Coun. v. Garmon*, 359 U.S. 236, 242-45, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959); and (3) the *Machinists* doctrine, *Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Empl. Relations Comm'n*, 427 U.S. 132, 140, 147-51, 49 L. Ed. 2d 396, 96 S. Ct. 2548 (1976). *Beaman v. Yakima Vly. Disposal, Inc.*, 116 Wn.2d 697, 703, 807 P.2d 849 (1991); *Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 125-26, 839 P.2d 314 (1992).

In general, the LMRA reserves issues touching on industrial relations and national labor policy to the exclusive jurisdiction of the National Labor Relations Board (NLRB). *Lumber Prod. Indus. Workers Local 1054 v. West Coast Indus. Relations Ass'n*, 775 F.2d 1042, 1045 (9th Cir. 1985) (hereinafter *Lumber Prod.*). However, section 301(a) allows state and federal courts to exercise concurrent jurisdiction over suits alleging violation of a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 n.2, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988); *Lumber Prod.*, 775 F.2d at 1045. Federal substantive law applies. *Joinette v. Local 20, Hotel & Motel Restaurant Employees & Bartenders Union*, 106 Wn.2d 355, 362, 722 P.2d 83 (1986).

Jurisdiction under section 301 is dependent on breach of the agreement. *Lumber Prod.*, 775 F.2d at 1047. The rights and liabilities of parties to a section 301 action must be the product of the agreement itself and not of some other origin. *Lumber Prod.*, 775 F.2d at 1046. Thus, an expired CBA cannot provide section 301 jurisdiction. *Lumber Prod.*, 775 F.2d at 1046. Since Hill's CBA expired before she was

fired, state court jurisdiction cannot be based on section 301(a) concurrent jurisdiction.

Hill contends her claim is not barred from state court consideration because it is based on an expired CBA and, thus, not controlled by the operation of section 301(a). *See Overby v. Chevron USA, Inc.*, 884 F.2d 470, 474 (9th Cir. 1989). However, the *Garmon* doctrine ·prevents her from using the expired CBA as a vehicle for obtaining access to state court.

■■ ·Under the *Garmon* doctrine, if a state law claim is based on an activity "arguably subject to § 7 or § 8"[2] of the LMRA, the NLRB has exclusive jurisdiction. *Lumber Prod.*, 775 F.2d at 1047-48 (quoting *Garmon*, 359 U.S. at 245); *accord, Beaman*, 116 Wn.2d at 704. Courts do not apply this test mechanically, but "if a crucial element of a state court action is identical to an element of an unfair labor practice . . . arguably covered" by sections 7 or 8, the state court may not hear the claim; the NLRB has exclusive jurisdiction. *Lumber Prod.*, 775 F.2d at 1048; *see Beaman*, 116 Wn.2d at 704-06.

Section 8(a)(5) of the NLRA makes it an unfair labor practice for an employer to change unilaterally the terms and conditions of employment following the expiration of an agreement. 29 U.S.C. § 158(a)(5); *Lumber Prod.*, 775 F.2d at 1046. The employer must maintain the status quo as to working conditions and wages under the agreement during negotiations for a new agreement. *NLRB v. Southwest Sec. Equip. Corp.*, 736 F.2d 1332, 1337 (9th Cir. 1984), *cert. denied*, 470 U.S. 1087 (1985). Thus, the terms of an expired agreement "survive" in the limited sense of defining the status quo maintained under section 8(a)(5). *Overby*, 884 F.2d at 474. The terms surviving are the essential components of the employer-employee relationship. *See Southwest Sec. Equip. Corp.*, 736 F.2d at 1337-38.

The clause in Hill's CBA requiring a showing of good cause prior to discharge is a term of employment and arguably an

---

[2] 29 U.S.C. §§ 157-58.

essential component of the employer-employee relationship. This determination was for the NLRB. If the NLRB had made such a finding, under section 8(a)(5) the good cause term would have continued in effect during the period in which the parties were negotiating a successor agreement. To the extent Hill's claim relies on the continued viability of a term of the expired CBA, the claim is "arguably subject" to section 8, and the NLRB has exclusive jurisdiction under *Garmon* to decide (1) whether the good cause provision survived the expiration of the contract and (2) if so, whether Penney's action violated section 8(a)(5) by changing the terms of employment.

Thus, the state court lacked jurisdiction to consider claims based on the expired CBA because section 301(a) applies only to an existing contract, and because the *Garmon* doctrine places exclusive jurisdiction of this claim in the NLRB. Hill argues, in the alternative, that state law recognizes an independent and alternative basis for the survival of the good cause contract provision. Here, however, she runs afoul of the third preemption theory, the *Machinists* doctrine. *Machinists*, 427 U.S. at 147-51.

> The "crucial inquiry" under the *Machinists* doctrine is if Congress intentionally left the conduct involved unregulated, choosing instead to leave it " 'to be controlled by the free play of economic forces.' " *Machinists*, at 140 (quoting *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 144, 30 L. Ed. 2d 328, 92 S. Ct. 373 (1971)).

*Beaman*, 116 Wn.2d at 703 n.4.

■ A recent Ninth Circuit decision held that the *Machinists* doctrine preempted an action based on a state statute that imposed a good cause contract term on parties negotiating a new CBA after expiration of an old agreement. *Barnes v. Stone Container Corp.*, 942 F.2d 689 (9th Cir. 1991). The *Barnes* court reasoned that Congress intended certain areas of labor management relations be left unregulated by both the federal and state governments. *Barnes*, 942 F.2d at 691, 693. Permitting the states to impose contract terms during the period when parties are negotiating a new contract could change the balance of economic power and alter incentives to

negotiate. *Barnes*, 942 F.2d at 691, 693. Thus federal law prohibits state "meddling". *Barnes*, 942 F.2d at 693.

The only distinguishing feature here is that Hill relies on state decisional law, as opposed to state statutory law, as the source of her contractual rights. In light of the rationale supporting *Machinists*, we find no significance to this distinction.[3] Hill cannot look to state law to revive her rights under the expired CBA. Federal law prohibits the state trial court from considering or extending the rights the CBA created.

However, there are state law remedies which do not interfere with the collective bargaining process. Hill can litigate in state court a claim that Penney made a binding promise, or entered into a contract with her individually, or any other claim that does not interfere with the collective bargaining process.

### MODIFICATION OF THE AT-WILL RELATIONSHIP

In a breach of employment contract case, the employee bears the burden of persuasion. *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 136, 769 P.2d 298 (1989). The general rule in Washington is that "an employment contract indefinite in duration may be terminated by either the employer or the employee at any time, with or without cause." *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 520, 826 P.2d 664 (1992). Hill failed to make a prima facie case that she had a right to be terminated only for cause or only in specific situations. *See Baldwin*, at 134-36.

Hill argues that provisions of the employee handbook and the personnel manual, along with the posted sales procedure rules and additional oral contracts, either solely or in combination, modified the at-will nature of her employment. The law requires an employer to establish cause to terminate an otherwise at-will employment contract if the employee has

---

[3]Indeed, the *Barnes* court relied heavily on *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 28-29 (2d Cir. 1988). The plaintiff in *Derrico* argued that the good cause provision of his expired CBA survived as an implied contract under the state case law. The *Derrico* court held his state court action preempted under *Machinists*.

given additional consideration or if the parties impliedly contract for discharge only for cause. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223, 685 P.2d 1081 (1984). An employer's unilateral declarations of a company policy of fair and just terminations, coupled with an employee's subjective understanding that his employer will not discharge him absent cause, is insufficient to convert an at-will to a for-cause contract. *Thompson*, 102 Wn.2d at 224.

Statements in employee manuals can modify the at-will employment contract. *Thompson*, 102 Wn.2d at 228-31. An employee may demonstrate that policies in the manual are part of the original employment contract or part of the contract as modified by proving contract formation, offer, acceptance, and consideration. *Thompson*, 102 Wn.2d at 228-29. This is the express contract exception to the at-will rule. *See Thompson*, 102 Wn.2d at 233-34.

An employer may also be bound by statements in an employee manual. *Thompson*, 102 Wn.2d at 229-30.

> [E]mployers expect, if not demand, that their employees abide by the policies expressed in such manuals. This may create an atmosphere where employees *justifiably rely* on the expressed policies and, thus, justifiably expect that the employers will do the same. . . .
> Therefore, we hold that if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship.

*Thompson*, at 230. In other words, an employee who justifiably relies on promises of specific treatment in specific situations found in an employee manual provided to employees may recover. *Burnside v. Simpson Paper Co.*, 66 Wn. App. 510, 527, 832 P.2d 537 (1992), *review granted*, 120 Wn.2d 1019 (1993).

Hill has failed to prove that Penney modified her at-will employment by making such promises. Her argument that the combination of the manual, rules, discussions, and handbook created an expectation of, and right to, only for-cause

termination fails. No alchemy of quantity can transmute incomplete proof into effective contract modifications. Hill must completely prove one or more contract modifications or binding promises to establish the right she claims.

Hill also argues she could be fired only for cause because Penney never told her she could be fired at will. This is contrary to the rule that employment of indefinite duration is at will unless otherwise specified. *Swanson*, 118 Wn.2d at 520. Although Penney had a general policy of fair treatment and causal discharge, and Hill had a belief she would be discharged only for cause, general policies and subjective beliefs do not modify an at-will employment contract. *Thompson*, 102 Wn.2d at 224.

■ Language in the personnel manual did not modify the at-will employment. Hill had not seen the manual; Penney distributed it only to senior supervisory management. Statements contained in a supervisor's manual providing for specific treatment are not enforceable if the employer did not distribute the manual to employees, the employee is not aware of the provisions, and the employee consequently does not rely on the provisions. *Burnside*, 66 Wn. App. at 528-29; *see Hatfield v. Columbia Fed. Sav. Bank*, 57 Wn. App. 876, 883-84, 790 P.2d 1258 (1990); *Adler v. Ryder Truck Rental, Inc.*, 53 Wn. App. 33, 36, 765 P.2d 910 (1988), *review denied*, 112 Wn.2d 1013 (1989).

To prove an express contract based on oral representations from the employer, the employee must have specifically bargained for job security requiring termination only for cause. *Siekawitch v. Washington Beef Producers, Inc.*, 58 Wn. App. 454, 461-62, 793 P.2d 994 (1990). Hill's threat to quit, the resulting conversation with Gering, and the $1.05 raise did not modify the at-will relationship. To the extent any contract was formed, it was that Hill would continue working in return for a raise. Both sides met their obligations. Hill's decision to reject another job offer while working at Penney does not constitute additional consideration or a modification of the at-will contract. Hill did not inform Pen-

ney of the other offer, and she did not use it to bargain for job security.

The procedure by which Hill received her employee handbook may well meet the requisites of contract formation based on such a handbook. *See Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 433, 435, 815 P.2d 1362 (1991). However, nothing in the handbook creates a right to be fired only for cause. The handbook is merely a list of rules and regulations, emphasizing Penney's retail philosophy. It does not define Hill's employment contract or discuss discharge policy. It does not spell out specific procedures for employee discharge, discipline, promotion, evaluation, or salary. The only "promise" of specific treatment is that disorderly conduct, drinking, or possession of drugs will result in discharge. Violation of any other rule may result in discharge; discharge is optional. A "promise" in a manual is not binding if its performance is optional or discretionary on the part of the promiser. *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613, 762 P.2d 1143 (1988).

The sales procedures rules posted on an employee bulletin board stated that "Infraction of Any One of Them is Sufficient Cause for Immediate Dismissal." We note first that this statement makes dismissal for infraction optional or discretionary; it does not appear to be a promise of specific treatment. We note second that the rule list spells out no procedures for Penney to follow when investigating and acting upon apparent violations of the rules. Those procedures were contained in security and personnel manuals not provided to employees. Cases requiring justification of discharge for violation of specific rules usually involve promises or contracts for specific procedures before termination. *E.g.*, *Brady v. Daily World*, 105 Wn.2d 770, 772, 775-76, 718 P.2d 785 (1986); *Swanson*, 118 Wn.2d at 516, 538-39.

Hill contends that the result in *Gaglidari* applies here. In *Gaglidari* a handbook provided for immediate dismissal for violating the rule against fighting on company premises, but

required a review process for other rule violations. 117 Wn.2d at 436. The *Gaglidari* court held that the employer "must have conducted an adequate investigation prior to terminating plaintiff such that it reasonably and in good faith concluded plaintiff had been fighting" to make the discharge proper under the immediate dismissal rule. *Gaglidari*, 117 Wn.2d at 437. The *Gaglidari* requirements do not apply here.

First, the no-fighting rule in *Gaglidari* was contained in a handbook held to constitute a contract, 117 Wn.2d at 433, 435; the posted list of rules in this case is not a contract. In the absence of a contract, an employer is required to follow certain predischarge procedures only if it has made promises to engage in specific treatment in certain situations. As we discussed above, the posted rules did not make a promise of discharge for infractions of the rules, rather they permitted the employer to exercise discretion. Further, Hill failed to demonstrate reliance on the stated consequences of violating the sales rules, as described in the posted notice.

Second, the *Gaglidari* rule requiring employer good faith and reasonable investigation prior to immediate dismissal was part of a larger scheme requiring good cause and review for most discharges. 117 Wn.2d at 436, 439. In this case, Penney did not contractually guarantee or unilaterally promise review procedures or discharge only for good cause. Penney could fire Hill for any reason or no reason.

Hill has failed to make a prima facie case that Penney could terminate her employment only upon a showing of good cause or in specific situations. Thus we need not reach the issues of whether Penney handled her discharge improperly or whether she mitigated her damages.

### CROSS APPEAL

■ Hill cross-appeals the dismissal on summary judgment of her other causes of action. In her brief, Hill provides argument and authority only for her bad faith and defamation claims. Without argument or authority to support them,

a party waives assignments of error. *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986).

■ An appellate court reviewing an order of summary judgment performs the same inquiry as the trial court. *Simpson Tacoma Kraft Co. v. Department of Ecology*, 119 Wn.2d 640, 646, 835 P.2d 1030 (1992). A court grants summary judgment only when no genuine issue of material fact exists and when the moving party is entitled to judgment as a matter of law. CR 56(c). The court considers the facts in the light most favorable to the nonmoving party, granting summary judgment only if reasonable persons could only reach one conclusion. *Simpson Tacoma Kraft Co.*, 119 Wn.2d at 646. Hill attempts to support her appeal of the summary judgment dismissal with the findings of the trial court; however, we may only consider the evidence and issues called to the attention of the court granting summary judgment. RAP 9.12.

Hill argues that this court should adopt a rule imposing a covenant of good faith in employment contracts. The Washington Supreme Court specifically declined to adopt such a contract requirement in *Thompson*, 102 Wn.2d at 227. This court is bound by that precedent. The trial court properly dismissed Hill's bad faith termination action.

Hill next argues that the trial court erred in summarily deciding that she failed to produce evidence of communication as part of her defamation claim. She points to Penney's statements to the Employment Security Department[4] and to her own statements on job applications as evidence of communication of the reasons for her termination.

■ Penney made the statements to Employment Security in the context of an official Department proceeding to determine whether Hill was entitled to an award of unemployment benefits. "Statements made during the course of and relevant to the proceedings of an administrative agency acting in a

---

[4]Penney told the Department that Hill was observed allowing the removal of merchandise without payment or receipt and accused her of dishonesty.

quasi-judicial manner are absolutely privileged." *Hurst v. Farmer,* 40 Wn. App. 116, 117, 697 P.2d 280, *review denied,* 103 Wn.2d 1038 (1985). An absolute privilege absolves the defendant of all liability for defamatory statements. *Bender v. Seattle,* 99 Wn.2d 582, 600, 664 P.2d 492 (1983).

As for Hill's "self-defamation" argument, publication by the "defamed" person does not create liability. *Lunz v. Neuman,* 48 Wn.2d 26, 33-34, 290 P.2d 697 (1955). The *Lunz* case also involved a plaintiff "publishing" the statements in employment applications. The trial court properly dismissed Hill's cause of action for defamation.

We reverse the final judgment entered by the trial court and affirm the summary judgment.

ALEXANDER, C.J., and MORGAN, J., concur.

Review denied at 122 Wn.2d 1023 (1993).