[No. 9081–7–III.  Division Three.  December 20, 1988.]

DAVID ADLER, *Appellant,* v. RYDER TRUCK RENTAL, INC., *Respondent.*

34

*Wade Gano,* for appellant.

*Don W. Schussler* and *Halverson & Applegate,* for respondent.

RIPPLE, J.*—David Adler sued Ryder Truck Rental, Inc., for wrongful discharge; the trial court dismissed the action on Ryder's motion for a directed verdict. We reverse and remand for trial.

On April 20, 1979, Mr. Adler was hired by Ryder as a mechanic on the night shift in Seattle. Mr. Ray Sharrah, who interviewed Mr. Adler, told him the first 6 months of employment would be a probationary period, with either party being able to terminate the job at will. Mr. Adler completed the probationary period and satisfactorily continued his employment, being promoted to lead man, a supervisory position, in the latter part of 1979. He received only one written warning notice, dated November 18, 1981, which referred to his failure to properly install wheel hubs and studs. At the bottom of this written warning was the following:

COMPANY POLICY ON DISCIPLINARY PROCEDURE

A system of progressive discipline is used at Ryder. A First Offense will result in a documented verbal warning with a notice put in your personnel file. A Second Offense will result in a written warning to be signed by the employee and supervisor and put into your personnel file. A Third Offense will carry a disciplinary action of three days off without pay and again a signed warning put into your personnel file. A Fourth Offense requiring discipline

---

*Judge John J. Ripple is serving as a Judge Pro Tempore of the Court of Appeals pursuant to RCW 2.06.150.

will result in discharge. Serious offenses will result in immediate discharge.

At the same time, Mr. Adler was advised by the district service manager of the company policy regarding its progressive system of discipline. While in the position of lead man, Mr. Sharrah instructed Mr. Adler on the company's disciplinary process, including the use of the warning notice.

In November 1983 Mr. Adler became aware of an opening with Ryder in Yakima. At his request he was transferred to the Yakima shop, effective January 1, 1984, which involved moving his family and losing the income from his wife's job. He was terminated on September 6, 1984, without prior notice, probation or suspension. The only issue presented is whether Mr. Adler presented sufficient evidence to defeat the motion for a directed verdict.

A motion for directed verdict admits the truth of the nonmoving party's evidence and all reasonable inferences therefrom. The motion shall be granted only in those instances where it can be held as a matter of law that there is no competent evidence which would sustain a verdict in favor of the nonmoving party. *Rasor v. Retail Credit Co.,* 87 Wn.2d 516, 534, 554 P.2d 1041 (1976); *Bainter v. United Pac. Ins. Co.,* 50 Wn. App. 242, 247, 748 P.2d 260, *review denied,* 110 Wn.2d 1027 (1988).

■ The parties are in agreement the controlling law is *Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 685 P.2d 1081 (1984). As in *Thompson,* Mr. Adler would concede there is no formalized agreement concerning his employment relationship with Ryder. As noted in *Thompson,* at 223:

> Generally, an employment contract, indefinite as to duration, is terminable at will by either the employee or employer. *Roberts v. ARCO,* 88 Wn.2d 887, 894, 568 P.2d 764 (1977); *Lasser v. Grunbaum Bros. Furniture Co.,* 46 Wn.2d 408, 410, 281 P.2d 832 (1955). However, such a contract is terminable by the employer *only for cause* if (1) there is an implied agreement to that effect or (2) the

employee gives consideration in addition to the contemplated service. *Roberts,* at 894.

*Thompson* continues, at page 230, with respect to the policies contained in personnel manuals:

> Therefore, we hold that if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship.

In this case, the personnel manual does not create any specific expectations for employees with respect to termination because the manual was written specifically for supervisory personnel. In addition, it was subject to change without notice and specifically stated the provisions in it were not binding on any employment contract. However, this court is not limited to examination of the personnel manual.

In *Brady v. Daily World,* 105 Wn.2d 770, 718 P.2d 785 (1986), the employee was fired after 32 years of employment. He sued, alleging the employer could discharge him only for cause. The Supreme Court reversed an order of dismissal on summary judgment stating, at pages 775–76:

> Even if *Thompson* is controlling, did plaintiff, for summary judgment purposes, make out a case? We hold that he did, considering the evidence and inferences in his favor as we must.
>
> The personnel handbook refers to dismissal for cause after careful consideration of all known facts. Whether any of these policies amounted to promises of specific treatment in specific situations, and if so, whether plaintiff justifiably relied upon any of these promises are questions of fact which remain to be proven.
>
> Furthermore, the pertinent rule here concerned dismissal for intoxication. Plaintiff denies ever being intoxicated on the job. The employer's records and affidavits often refer to "being under the influence". Whether that, if true, was the equivalent of intoxication is a question of fact which remains to be proven.
>
> In addition, the incident on December 5 which triggered plaintiff's discharge raises conflicting inferences in

that plaintiff was allowed to work his entire shift even though allegedly under the influence of alcohol. Plaintiff denies consumption of alcohol except for one or two beers with dinner. Again, a factual issue exists.

Finally, the employer's evaluation of plaintiff, shortly before discharging him, showed performance at or above minimum job requirements—particularly as to safety, which was the employer's main concern about intoxication. That evaluation evidenced no concern about drinking even though all but one alleged incident had occurred prior to that evaluation. Those matters, coupled with plaintiff's testimony that he was told that he was doing a good job and would be employed so long as he so performed, raise issues of fact as to conditions of employment and cause for termination.

Consequently, there are genuine issues of material fact within the rationale of *Thompson v. St. Regis Paper Co.*, *supra*; summary judgment on this cause of action was error.

Compare *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 762 P.2d 1143 (1988) (when employee was not aware of layoff policy in a personnel manual until after termination, there was insufficient evidence employee relied on provision).

Here, the trial court was not in error when it determined the evidence failed to establish any promise of permanent employment. However, the issue which the trial court failed to address is whether Ryder specifically represented to Mr. Adler discharge would be for cause only. Ryder argues the reason for dismissal was its belief Mr. Adler had been involved in falsifying company records and the unauthorized use of company gasoline credit cards. However, the court did not consider the alleged misconduct because of its order in limine. Thus, our review of the evidence is limited to that which was before the trial court when it dismissed the action.

Mr. Adler stated he understood termination would be for cause only and was trained as a supervisor that discharge would be for cause. The notice received by Mr. Adler states discharge is for cause only; Mr. Sharrah stated discharge

would be for cause only and that the policy was well known among Ryder employees. Thus, considering this evidence and all reasonable inferences in a light most favorable to Mr. Adler, a prima facie case of wrongful discharge has been presented. *See Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880, 895 (1980).[1]

Upon remand, Ryder's defense to the charge of wrongful discharge will be an assertion Mr. Adler was terminated for cause, stemming from his alleged unlawful use of gasoline credit cards. At the first trial, an order in limine was entered prohibiting Ryder from relying on evidence related to the misconduct. Ryder failed to appeal a decision by an administrative law judge who determined there was insufficient evidence of misconduct to deny unemployment benefits. Ryder argues the order in limine is not binding on the court until an objection is timely made in the course of trial and the predicate for the ruling is no longer hypothetical. Until then, it contends, the ruling in limine is advisory, tentative and not the basis of error, citing *State v. Wilson,* 29 Wn. App. 895, 899, *review denied,* 96 Wn.2d 1022 (1981). *See also Jordan v. Berkey,* 26 Wn. App. 242, 244, 611 P.2d 1382 (1980). However, here, the order in limine more closely resembles the order reviewed in *State v. Latham,* 100 Wn.2d 59, 66, 667 P.2d 56 (1983): "When a trial judge makes a clear nontentative ruling on such an issue, the defendant is entitled to rely upon that ruling." *Accord, Sturgeon v. Celotex Corp.,* 52 Wn. App. 609, 621, 762 P.2d 1156 (1988).

Whether Mr. Adler was guilty of the misconduct involving gasoline is collateral to the issue of proper discharge. The only question is whether Ryder conducted an investigation and found evidence which indicated the employee should be dismissed. This was not an issue before the

---

[1]We note the Supreme Court has before it an issue which may affect Ryder's burden of proof. Baldwin v. Sisters of Providence, cause 54771-8, heard November 16, 1988. The trial court may want to consider postponing this case until that decision is filed.

administrative law judge (*i.e.,* entitlement to unemployment versus improper termination); therefore, the court, on remand, should not be constrained by the administrative ruling. *McDaniels v. Carlson,* 108 Wn.2d 299, 305, 738 P.2d 254 (1987) (where an issue arises in two entirely different contexts, there is no identity of issues to satisfy the requirements of collateral estoppel).

The judgment is reversed and the cause remanded for trial.

THOMPSON, C.J., and MUNSON, J., concur.

Review denied at 112 Wn.2d 1013 (1989).