[No. 9751–0–III. Division Three. May 17, 1990.]

John Burke Hatfield, *Appellant,* v. Columbia Federal Savings Bank, *Respondent.*

*Harry E. Ries* and *Larson, Tracy & Ries,* for appellant.

*Thomas Lemly* and *Davis Wright Tremaine,* for respondent.

THOMPSON, J.—John Burke Hatfield appeals the summary dismissal of his causes of action against Columbia Federal Savings and Loan Association for age discrimination, breach of contract, and promissory estoppel. Because

we find a genuine issue of material fact exists as to Mr. Hatfield's claim of age discrimination, we reverse that portion of the summary judgment.

Columbia Federal hired Mr. Hatfield, age 43, in 1973. In 1981, he was promoted to vice–president of the loan servicing department. In 1985, Thomas Guderian, senior vice–president and loan division manager, talked to Mr. Hatfield about assuming the position of conversion coordinator responsible for Columbia Federal's conversion to a new data processing system. Mr. Hatfield had served on the data processing committee and knew that the conversion itself would take only 8 months. He expressed concern to Mr. Guderian that the position would then terminate. He recalls Mr. Guderian making the following statement:

> While we can't tell exactly what's going to happen to any of us in the future, I perceive this job as being ongoing for the next three to five years; that after the conversion is over there is the position of loan department liaison . . . [P]lus there will be the coordinating of the conversion of some of our branches and some of our subsidiaries . . . I can see this ongoing for a period of three to five years. . . . And the way we have seen the industry grow and knowing that as soon as we install a system it's antiquated, . . . we'll start the same process over again at the end of three to five years.

Mr. Hatfield accepted the new position, and Larry Hough, who was 37, replaced him as vice–president of the loan servicing department.

The conversion process was completed in February 1986. In March 1986, Mr. Hatfield was absent from work approximately 1 month due to surgery. On his second or third day back, Mr. Guderian called him into his office and told him Columbia Federal was eliminating his position. At the time, Mr. Hatfield was 56 years old. Mr. Guderian testified he and the other senior vice–presidents looked for another position for Mr. Hatfield, but found none.

Mr. Guderian also testified that Mr. Hatfield's responsibility for coordinating data processing needs was distributed among the department heads, including Larry Hough. In a letter to Mr. Hough's personnel file dated July 1986,

Mr. Guderian wrote that Mr. Hough: "[a]ssumed responsibilities of D.P. coordinator for the loan division. This also allowed company to eliminate a full–time permanent staff position." In Mr. Hough's opinion,

> the way it was intended, . . . each department manager would be responsible for their area. As it turned out, I think I took on somewhat some of that responsibility [of Mr. Hatfield's].

Mr. Guderian admits that Mr. Hatfield had concerns about the job's longevity and that they discussed the possibility that the position could grow. However, he says he had no idea how long the position would last when he suggested the transfer. According to Mr. Guderian, the primary reason he recommended elimination of Mr. Hatfield's position in the spring of 1986 was feedback he received from department heads that Mr. Hatfield was not performing his job of facilitating their contact with data processing. He stated that the various department heads told him that they preferred to work directly with the data processors.

When pressed for specifics, Mr. Guderian said that Esther Kontos, the operations manager, had complained to Larry Hough. Mr. Guderian admitted that he never relayed these complaints to Mr. Hatfield or attempted to work with him to improve his performance. The depositions of the department heads and some managers are included in the record. They all deny complaining about Mr. Hatfield's performance. Mr. Hough stated he believed Mr. Hatfield was doing a fine job. Prior to his termination, all of Mr. Hatfield's performance reviews were satisfactory or better.

In this action, Mr. Hatfield alleges that Columbia Federal discriminated against him on the basis of age when it transferred him to conversion coordinator and then terminated him. He also asserts that Columbia Federal violated its own written and unwritten policies, first when it failed to work with him to attempt to improve his allegedly deficient performance, and then when it did not place him in another job. Finally, Mr. Hatfield maintains Columbia

Federal negligently misrepresented the conversion coordinator position.[1] The Superior Court granted Columbia Federal's motion for summary judgment.

First, Mr. Hatfield contends that issues of material fact exist as to whether Columbia Federal eliminated his position for age related reasons.

 Washington cases have relied upon federal decisions under the Age Discrimination in Employment Act of 1967 in setting forth the burden of proof in actions brought under RCW 49.60.180,[2] which prohibits age discrimination in employment. In *Roberts v. ARCO,* 88 Wn.2d 887, 892, 568 P.2d 764 (1977), the court held that a plaintiff-employee has the initial burden of presenting a prima facie case of age discrimination. The plaintiff establishes a prima facie case of age discrimination when he shows that he was within the protected class, was discharged, was doing apparently satisfactory work, and *was replaced by a younger person.*[3] The burden of production then shifts to the defendant employer to show that the employee was discharged for reasons other than his age. *Roberts. See also Brady v. Daily World,* 105 Wn.2d 770, 777, 718 P.2d 785 (1986). In summary judgment cases, a plaintiff must respond sufficiently to create a genuine issue of material fact on the question of whether the defendant's reasons are a mere pretext. *Pace v. Southern Ry. Sys.,* 701 F.2d 1383, 1391 (11th Cir.), *cert. denied,* 464 U.S. 1018, 78 L. Ed. 2d

---

[1]In opposing summary judgment, this latter cause of action gave way to a promissory estoppel claim.

[2]RCW 49.60.180 provides:
"It is an unfair practice for any employer:
". . . .
"(2) To discharge or bar any person from employment because of age, sex, marital status, race, creed, color, national origin . . .".

[3]These elements are an adaptation of the elements set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).

724, 104 S. Ct. 549 (1983); *McDaniel v. Mead Corp.*, 622 F. Supp. 351, 353 (W.D. Va. 1985), *aff'd*, 818 F.2d 861 (4th Cir. 1987).

Here, Mr. Hatfield produced proof sufficient to satisfy the first three elements of a prima facie case of age discrimination. He was within the protected class, he was discharged, and apparently was doing satisfactory work. Mr. Hatfield argues that he also produced proof of the fourth element, *i.e.*, that he was replaced by a younger person. He relies upon Mr. Hough's testimony that after Mr. Hatfield was terminated, he assumed the responsibilities of the data processing coordinator for the loan division.

Columbia Federal counters that Mr. Hough took over only *some* of Mr. Hatfield's responsibilities. A showing that part of the discharged employee's duties subsequently were performed by other employees is not sufficient by itself to give rise to an inference of age discrimination. *Husbands v. Econo Therm Energy Sys. Corp.*, 650 F. Supp. 294, 297 (D. Minn. 1986). *See also Raschick v. Prudent Supply, Inc.*, 830 F.2d 1497, 1500 (8th Cir. 1987), *cert. denied*, 485 U.S. 935, 99 L. Ed. 2d 272, 108 S. Ct. 1111 (1988). Here, the record reflects a dispute as to what Mr. Hatfield's responsibilities would have entailed, after the conversion to the new data processing system was completed. Mr. Hatfield testified that Mr. Guderian described the ongoing position as that of "loan department liaison". If this is accurate, then Mr. Hough replaced Mr. Hatfield in the sense he took over the responsibilities of data processing coordinator for the loan division. On the other hand, Mr. Guderian and John Cleve Borth, Columbia Federal's chief executive, testified that the new position would have served as a liaison between data processing and *all* of the departments and divisions.

In any event, it is not necessary to decide whether Mr. Hatfield raised an issue concerning his replacement by

Mr. Hough.[4] The Supreme Court has indicated it does not intend the four elements of a prima facie case set out in *Roberts* to be either "rigid, mechanized, or ritualistic," or the exclusive method of proving a claim. *Grimwood v. University of Puget Sound, Inc.,* 110 Wn.2d 355, 363, 753 P.2d 517 (1988) (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1016–17 (1st Cir. 1979)). In B. Schlei & P. Grossman, *Employment Discrimination Law* (2d ed. 1983), the authors state at pages 498–99:

> Courts have been flexible in adapting the *McDonnell Douglas* [*Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)] test to age cases. The fourth part of the *McDonnell Douglas* test, that the job remained open, has been dispensed with in reduction–in–force cases *and in cases where the plaintiff has introduced direct or circumstantial evidence of discriminatory intent* or statistical evidence of discriminatory conduct.

(Footnotes omitted. Italics ours.) *See, e.g., EEOC v. Western Elec. Co.,* 713 F.2d 1011, 1014–15 (4th Cir. 1983); and *McDaniel v. Mead Corp., supra* at 357. "The ultimate issue is whether age was a factor in a decision of an employer to terminate [a] . . . claimant and whether the age of claimant made a difference in determining whether he was to be retained or discharged." *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 70 (6th Cir. 1982).

Has Mr. Hatfield come forward with evidence sufficient to create an inference that Columbia Federal was motivated by discriminatory intent when it terminated him? The evidence is that at the time Mr. Guderian asked Mr. Hatfield to transfer, Mr. Guderian told him the coordinator position "could grow". He later testified that one of Mr. Hatfield's jobs was to work with department heads and "make them dependent upon him getting the answers . . .". The primary reason he gave for eliminating the position was feedback from the department heads that this task "was simply not being done . . .". Yet the depositions of the various

---

[4]Thus, we do not address Columbia Federal's assertion that Mr. Hatfield did not rely upon this argument before the trial court and is precluded from raising it now.

department heads do not support Mr. Guderian's characterization of the feedback. Columbia Federal cites Phyllis Couch's testimony as supportive. It is not. All she testified to was that she had discussed Mr. Hatfield's performance as coordinator with Mr. Guderian, but that it was more of a complaint about the capabilities of the data processing program itself, not Mr. Hatfield.

We hold the above evidence creates an inference of discriminatory intent. When viewed in the context that Mr. Guderian (1) indicated a possibility that the job would last when he asked Mr. Hatfield to transfer, and (2) filled Mr. Hatfield's former position with a younger person, the fact that the department heads contradicted his claim of negative feedback leads to an inference of age discrimination.

Columbia Federal also relies upon Mr. Guderian's testimony in meeting its burden of producing evidence that it eliminated Mr. Hatfield's position for nondiscriminatory reasons. Since the department heads contradicted Mr. Guderian's testimony, there exists a genuine issue of material fact whether Columbia Federal's reasons were merely pretextual.

The court erred when it granted summary judgment dismissing Mr. Hatfield's action for age discrimination.

Second, Mr. Hatfield asserts that issues of material fact exist as to whether Columbia Federal breached an employment contract when it terminated him. He relies upon several statements in the pre–1986 version of Columbia Federal's Policy Manual. That manual was distributed to supervisors only, and not to employees in general.

In *Adler v. Ryder Truck Rental, Inc.,* 53 Wn. App. 33, 36, 765 P.2d 910 (1988), *review denied,* 112 Wn.2d 1013 (1989), the court stated in dicta: "In this case, the personnel manual does not create any specific expectations for employees with respect to termination *because the manual was written specifically for supervisory personnel.*" (Italics ours.) Apparently, the plaintiff in *Adler,* like Mr. Hatfield here, was a supervisor and had access to the manual. In

*Owens v. American Nat'l Red Cross,* 673 F. Supp. 1156, 1165 (D. Conn. 1987), the court held that a supervisors' manual cannot form the basis for an enforceable contract, *even as between the supervisor and the employer.* The court reasoned that the statements in the manual were never made to employees and therefore could not be construed as promises. *See* H. Perritt, *Employee Dismissal Law and Practice* § 4.8 (Supp. 1989). Contrast *Morriss v. Coleman Co.,* 241 Kan. 501, 738 P.2d 841, 849 (1987), in which the court relied on a supervisors' manual which had become known to the employees.

Here, there is no evidence that the provisions of the manual were known generally. On the authority of *Adler* and *Owens,* we hold that Mr. Hatfield cannot rely upon the statements in the supervisors' manual.

Mr. Hatfield also alleges that Columbia Federal had an unwritten policy of employee retention. He testified that he believed that his employer would make every effort to "retrain, resituate, whatever was required in order to retain good employees especially employees of tenure . . .". However, he cited no facts to support his assertion. Under the holding in *Parker v. United Airlines, Inc.,* 32 Wn. App. 722, 725, 649 P.2d 181, *review denied,* 98 Wn.2d 1011 (1982), an implied agreement cannot be established solely by an employee's subjective belief or understanding. *See also Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 224, 685 P.2d 1081 (1984).

Promises of employment security made to a specific employee have been enforced as express contracts. In *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 610, 292 N.W.2d 880, 890 (1980), the court held:

> When a prospective employee inquires about job security and the employer agrees that the employee shall be employed as long as he does the job, a fair construction is that the employer has agreed to give up his right to discharge at will without assigning a cause and may discharge only for cause . . ..

In *Adler,* this court reversed a summary judgment for an employer in circumstances in which the employee had been

told he would be dismissed for cause only. *See also* H. Perritt, § 4.7, at 182.

■ Mr. Hatfield testified that he understood that he would be retained if he did a satisfactory job, but he could not cite any particular conversation in which he was told that expressly. His understanding is conclusory and is not sufficient to defeat Columbia Federal's summary judgment motion. *Grimwood,* at 366. Mr. Hatfield's strongest argument that Columbia Federal made a commitment to him is based upon Mr. Guderian's statements that the coordinator position could grow and last 3 to 5 years. However, these statements were phrased as possibilities rather than promises. We hold the facts do not raise an issue as to the existence of either an implied or an express contract to discharge only for cause.

Third, Mr. Hatfield argues that Mr. Guderian's representations about the longevity of the coordinator's position amounted to a promise upon which he justifiably relied to his detriment. He therefore assigns error to the court's dismissal of his action based upon promissory estoppel.

■ The doctrine of promissory estoppel was developed to cover certain situations in which consideration is lacking, but enforcement of the promise is appropriate because the promisor reasonably should expect the promise to induce detrimental reliance on the part of the promisee. J. Calamari & J. Perillo, *Contracts* § 6–1, at 271–72 (3d ed. 1987) (citing Restatement of Contracts § 90 (1952)). The doctrine does not apply here. The alleged promise, Mr. Guderian's representations, was supported by a bargained for consideration—Mr. Hatfield's agreement to transfer at Columbia Federal's request to the coordinator position. Moreover, this cause of action suffers from the same defect as Mr. Hatfield's action for breach of express contract, discussed above. *I.e.,* Mr. Guderian's statements concerned possibilities rather than promises. The court did not err in dismissing the promissory estoppel action.

The summary dismissal of Mr. Hatfield's age discrimination claim is reversed. The remainder of the judgment is affirmed.

GREEN and SHIELDS, JJ., concur.