[No. 27823-1-I.   Division One.   July 20, 1992.]

A. DEANE BURNSIDE, *Respondent,* v. SIMPSON PAPER COMPANY, *Appellant.*

512

*Michael R. Rayton, John P. Mele,* and *Ryan, Swanson & Cleveland,* for appellant.

*Jeffrey L. Needle* and *Paul G. Gillingham; Douglas Pibel* and *Pibel & Marston,* for respondent.

AGID, J. — Simpson Paper Company (Simpson Paper) appeals the judgment entered against it on claims of age discrimination and breach of implied contract brought by a former employee, A. Deane Burnside (Burnside), following the termination of his employment by Simpson Paper. Burnside cross-appeals the trial court's grant of a directed verdict in favor of Simpson on the issue of emotional distress.

Burnside was hired by Simpson Timber Company (Simpson Timber), a Washington corporation headquartered in Seattle, in February 1966. At the time he was hired, Burnside received a copy of the Simpson Management Guide. He was instructed to rely on the guide in his treatment of other employees, and he testified he also relied on it to govern Simpson Timber's treatment of him. In 1982, Burnside was transferred to Simpson Paper, a wholly owned subsidiary of Simpson Timber,[1] as a result of an internal restructuring within the two companies. Simpson Paper is a Washington corporation headquartered in San Francisco, California. After Burnside was transferred, Burnside's new supervisor at Simpson Paper, John Fannon (Fannon), asked Burnside to move from Seattle, where he had lived since 1966, to San Francisco. Burnside complied and moved to San Francisco

---

[1] Burnside's action against Simpson Timber was eventually dismissed on the ground that there was insufficient evidence connecting Simpson Timber to the alleged discrimination.

in 1983, where he bought a condominium. He continued to maintain his home in Seattle where his wife continued to reside. Burnside returned to Seattle almost immediately following his termination in November 1984.

While he was employed by Simpson Paper, Burnside held the position of Marketing Manager Pulp. Burnside's primary responsibility was to market wood pulp produced by a Simpson Paper mill located in Eureka, California. He was also responsible for purchasing other types of pulp from other paper mills and suppliers. During the nearly 19 years Burnside worked for Simpson Timber and Simpson Paper, the Japanese pulp market became a major outlet for Simpson Paper pulp products. Up to the time Fannon became his supervisor, Burnside received consistently high annual performance evaluations.

Burnside made his first trip to Japan in the early 1970's when the Japanese pulp market was just beginning to develop. The structure of the Japanese distribution system made it necessary for Simpson Paper to sell its pulp through local sales agencies, which in turn resold the pulp to end-user mills. Simpson Paper initially hired Price & Pierce International (Price & Pierce) as its agent in 1976, and later retained Crown Zellerbach International (CZI) in that capacity as well. Price & Pierce also employed Carol Nett, Burnside's wife, for a period of time as a consultant in her capacity as president of Evergreen Consulting. During that time, she was also hired as a temporary pulp coordinator by Simpson Paper. She sometimes accompanied Burnside to Japan and attended business meetings.

Fannon first visited Japan in 1983. During that trip, he and Burnside met with Simpson Paper's sales agents and some customers. Fannon returned to Japan alone in November 1984. While there, Fannon met with Katsumi Sasaki, a Japanese employee of Price & Pierce, and Kinji Yasu, a Japanese employee of CZI, who complained, as some customers purportedly did as well,[2] that Carol Nett sometimes

---

[2] There was no direct testimony by any customers of complaints about Burnside's behavior. Rather, testimony to that effect came in indirectly through

attended business meetings, that Burnside was lazy and arrogant, and that he preferred fine wines to making customer calls. Fannon testified that, as a result, he believed that Simpson Paper's image and credibility in Japan were threatened. On November 19, 1984, the day after he returned from Japan, Fannon met with Burnside and informed him that, based on the reports concerning his behavior Fannon had received while in Japan, he was terminated. No one investigated the validity of those reports prior to Burnside's termination, nor was Burnside given an opportunity to respond to the allegations that were made. Burnside was 58 years old at the time he was terminated. He was replaced as Marketing Manager Pulp by Keith Anderson, a 33-year-old with no previous international experience in marketing pulp.[3]

After his termination, Burnside worked for Evergreen Consulting, an import-export business he owned jointly with his wife. He filed this action alleging age discrimination in violation of RCW 49.60 and breach of implied contract in July 1986. The jury returned a verdict in Burnside's favor.

# I
## SUBJECT MATTER JURISDICTION

■ Simpson Paper contends that the trial court lacked subject matter jurisdiction over Burnside's claim for age discrimination under RCW 49.60. A lack of subject matter jurisdiction can be raised at any stage of the proceedings. RAP 2.5(a); CR 12(h)(1). Subject matter jurisdiction refers to a court's power to hear and determine cases of the general class to which the proceedings before it belong. *In re Adoption of Buehl*, 87 Wn.2d 649, 655, 555 P.2d 1334 (1976); 21 C.J.S. *Courts* § 18 (1990). Washington's superior courts have broad and comprehensive original jurisdiction in all cases in which jurisdiction has not by law been vested

Fannon's testimony or the testimony of Sasaki and Yasu, Simpson Paper's agents in Japan.

[3]While Burnside's purchasing responsibilities were assigned to Robert Millard, age 53, this was never Burnside's primary area of responsibility.

exclusively in some other court. Const. art. 4, § 6. Because the Washington State Constitution confers such a broad grant of jurisdiction on the superior courts, exceptions to that jurisdictional grant will be narrowly read. *Orwick v. Seattle*, 103 Wn.2d 249, 251, 692 P.2d 793 (1984). If a Legislature has shown no indication of its intention to limit jurisdiction, an act should be construed as imposing no limitation. 21 C.J.S. *Courts* § 13.

Simpson Paper argues that the trial court lacked subject matter jurisdiction based on its interpretation of the language of RCW 49.60.010, which recites in part:

> **49.60.010 Purpose of chapter.** This chapter shall be known as the "law against discrimination". It is an exercise of the police power of the state for the protection of the public welfare, health, and peace of the people of this state, and in fulfillment of the provisions of the Constitution of this state concerning civil rights. The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of race, creed, color, national origin, sex, marital status, age, or the presence of any sensory, mental, or physical handicap are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state. A state agency is herein created with powers with respect to elimination and prevention of discrimination in employment . . . because of . . . age[.]

Specifically, Simpson Paper contends that the reference to "inhabitants" in this section denies Washington courts subject matter jurisdiction over claims under RCW 49.60 brought by anyone who is not a Washington resident. They argue that Burnside was not a Washington resident because he lived in San Francisco when he was fired. Neither RCW 49.60 nor the decisions applying it defines "inhabitant".

■ ■ Rules of statutory construction provide that, as a general matter, "the spirit and intent of the statute should prevail over the literal letter of the law", and that statutes should be interpreted in that manner which "best advances the perceived legislative purpose." *Wichert v. Cardwell*, 117 Wn.2d 148, 151, 812 P.2d 858 (1991). A literal reading of a statute is to be avoided if it would result in unlikely, absurd or strained consequences. *State v. Neher*, 112 Wn.2d 347,

351, 771 P.2d 330 (1989). In addition, RCW 49.60 itself provides:

> The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof. . . . Nor shall anything herein contained be construed to deny the right to any person to institute any action or pursue any civil or criminal remedy based upon an alleged violation of his civil rights.

RCW 49.60.020. *See also Phillips v. Seattle*, 111 Wn.2d 903, 908, 766 P.2d 1099 (1989) (the statutory protections against discrimination are to be liberally construed and their exceptions narrowly confined).

■ To determine the sense in which a term concerning residence is used in a statute, it is necessary to look to the object or purpose of the statute in which the term is employed. *Wichert*, 117 Wn.2d at 151. Neither the title of RCW 49.60.010 — "Purpose of chapter" — nor the text contains any language suggesting any intent to impose jurisdictional limitations. While the section refers generally to the inhabitants of Washington State as the intended beneficiaries of RCW 49.60, that reference does not include any limiting language, *e.g.*, "only", that would provide a basis for concluding that the reference should be read in a restrictive manner. The reference to "the people" in the preceding sentence similarly suggests that "inhabitants" is simply a general reference and not intended to impose residence requirements on those who would seek redress under the statute.[4]

■ Limiting the application of RCW 49.60 only to cases alleging age discrimination against Washington inhabitants, as Simpson Paper proposes, would effectively allow Washington employers to discriminate freely against non-Washington inhabitants.[5] To interpret the statute in a manner that

---

[4]Use of the phrase "any person" in RCW 49.60.020 lends further support to the conclusion that the reference to "inhabitants" in the preceding section was not intended by the Legislature as a jurisdictional limitation. In the same vein, RCW 49.60.030(2) provides that "[a]ny person deeming himself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction".

[5]As we recognize in section II of this opinion, *infra* at 519-21, the purpose of RCW 49.60 is to regulate Washington *employers*. We see no basis in the statute for

discriminates between Washington residents and residents of other states would be to undermine the fundamental purpose of the act, *i.e.*, eliminating discrimination, and would itself raise serious constitutional questions. Interpreting the statute in a manner that permits discrimination by Washington corporations in some cases would also contravene the other stated goal of the statute, to eliminate an activity that "menaces the institutions and foundation of a free democratic state." RCW 49.60.010. Washington inhabitants benefit when Washington corporations such as Simpson Paper do not discriminate, regardless of whether the individual who is free from discrimination is an inhabitant of the state of Washington or not. There is thus no basis consistent with the purposes of the statute for concluding that the reference to "inhabitants" is intended as a jurisdictional limitation on a court's power to hear cases regarding age discrimination.[6]

## II
### APPLICABILITY OF WASHINGTON LAW

■ Simpson Paper next contends that, even if Washington courts have subject matter jurisdiction in this case, the trial court erred in applying Washington law to Burnside's age discrimination claim. Washington resolves choice of law questions under the "most significant relationship" test embodied in the Restatement (Second) of Conflict of Laws §§ 6, 145 (1971). *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580, 555 P.2d 997 (1976). This approach requires that contacts be considered in terms of which contacts are most significant; the number of contacts alone is not in itself determinative. *Johnson*, 87 Wn.2d at 581. Factors consid-

concluding that the Legislature intended to limit its coverage to employees of Washington corporations who are also residents of the state.

[6]To the extent that Simpson Paper's argument that the trial court lacked subject matter jurisdiction is based on Burnside's presence in California or the fact that he was terminated in California, Simpson Paper confuses the question of whether the court had subject matter jurisdiction with questions of personal jurisdiction and venue. Any claims based on lack of personal jurisdiction or improper venue were necessarily waived by Simpson Paper's failure to raise them at an earlier stage of the proceedings. CR 12(h)(1).

ered in *Johnson* include the place where the injury occurred, the place where the conduct causing the injury occurred, the place of residence, the place of incorporation or place of doing business of the parties, and the place where the relationship between the parties is centered, if any. 87 Wn.2d at 581. The significance of each of the various contacts is to be evaluated in the context of the type of claim that is being made and the facts of the particular case. *See* 87 Wn.2d at 581. The "most significant relationship" approach also directs a court to evaluate the interest and policies expressed in the respective laws of the concerned states. 87 Wn.2d at 580-82.

■ The same policies and considerations discussed above in determining that Washington courts have subject matter jurisdiction also support the application of Washington law in this case. In an age discrimination claim, it is the fact of the alleged discrimination that is of the greatest significance. It is not particularly meaningful to attempt to focus on the specific location where that discrimination occurred,[7] particularly when the job involved was an international marketing position that involved a great deal of travel. Of the factors articulated in *Johnson*, therefore, it is the place of domicile or incorporation of the parties involved that retains the most significance.

■ The primary purpose of RCW 49.60 is to regulate the conduct of employers. Simpson Paper, as a Washington corporation, is a Washington domiciliary and thus a Washington employer. This is not a case where Washington courts are attempting to regulate employment activity in other states. Rather, it is a case where the plaintiff seeks to invoke Washington law to regulate the activity of a Washington corporation. As Simpson Paper points out, the purpose of an action brought under RCW 49.60 alleging age discrimination is not only to remedy past discrimination, but also to pre-

---

[7]That the firing took place in San Francisco is also of little moment. One could also argue that Japan, where Fannon heard the reports, or the Pacific Ocean, over which he was flying when he decided to fire Burnside, were places where the discrimination occurred.

vent future occurrences. We agree that California has some contacts with the parties and issues here. However, Washington's interest in assuring that Washington corporations abide by its laws generally, and specifically that they do not engage in illegal discrimination, is primary and mandates the application of Washington law in this case.

## III
### ADMISSIBILITY OF EVIDENCE

■ Simpson Paper next argues that the trial court erred in admitting evidence concerning the prior termination of two older employees, Charles Nordstrom and Donald Ehlen, because that evidence was irrelevant and prejudicial. A trial court has broad discretion in balancing the probative value of evidence against the potential that harmful consequences, such as unfair prejudice, might result from its admission. *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 256, 744 P.2d 605 (1987); ER 403. Unfair prejudice may result when evidence is likely to confuse or mislead a jury so that its decision is made for an improper reason, such as on an emotional rather than on a rational basis. *Lockwood*, 109 Wn.2d at 257.

■ The evidence concerning the terminations of the two prior employees was introduced to show that Fannon acted in the same way in terminating those employees as he did when he terminated Burnside.[8] Evidence of other discriminatory acts attributable to an employer is admissible in appropriate circumstances. *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1423 (7th Cir. 1986).[9] In particular, "[a]n

---

[8]The court permitted testimony by Nordstrom and permitted Fannon to be questioned concerning Ehlen's termination. Testimony concerning a third employee was excluded on the grounds of lack of foundation and relevance. Neither Nordstrom nor Ehlen filed an age discrimination claim. However, there were similarities in that neither had any prior warning and that the reasons given for those terminations were apparently pretextual.

[9]Because RCW 49.60 substantially parallels Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, Washington courts look to federal law in construing RCW 49.60. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 361-62, 753 P.2d 517 (1988); *Hollingsworth v. Washington Mut. Sav. Bank*, 37 Wn. App. 386, 390, 681 P.2d 845, *review denied*, 103 Wn.2d 1007 (1984).

employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination." *Ratliff v. Governor's Hwy. Safety Program*, 791 F.2d 394, 402 (5th Cir. 1986) (citing *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)). Here, the evidence concerning the prior terminations was directly relevant to show that the employer's proffered explanation was a pretext for age discrimination.[10] The jury was free to give that evidence the weight it deemed appropriate. It was not confusing or misleading. Nor was it so inflammatory or unduly prejudicial as to have prevented the jury from making a rational decision. The trial court properly admitted the testimony.

## IV
### BURDEN OF PROOF

■ Simpson Paper also complains that the trial court erred in failing to instruct the jury on the shifting burdens of proof that apply in age discrimination claims. Instructions are sufficient if, when taken together, they allow the parties to argue their theories of the case, are not misleading, and accurately inform the jury of the applicable law. *Gammon v. Clark Equip. Co.*, 104 Wn.2d 613, 617, 707 P.2d 685 (1985). A trial court has considerable discretion in deciding how instructions will be worded. 104 Wn.2d at 617. The absence of a specific instruction on a matter at issue is not error if the instructions given clearly inform the jury of the applicable law on that issue and permit each party to argue his theory of the case. *Crossen v. Skagit Cy.*, 100 Wn.2d 355, 360, 669 P.2d 1244 (1983).

---

[10]That the court in *Roberts v. ARCO*, 88 Wn.2d 887, 568 P.2d 764 (1977), on which Simpson Paper relies, determined that the evidence offered there with respect to the terminations of two prior employees was too remote and irrelevant to be admissible, is not determinative of relevance here. Those employees were older than the plaintiff, and there was no showing that their jobs, working conditions or the way in which they were discharged were similar to Roberts'.

■ Washington courts utilize the shifting burdens of proof formulation articulated in *McDonnell Douglas*, 411 U.S. at 802-04. This standard applies in age discrimination cases. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 361-64, 753 P.2d 517 (1988). After the plaintiff has met his or her burden of establishing a prima facie case of age discrimination,[11] the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge. Once an employer has met its burden of production so as to create a genuine issue of material fact, the plaintiff must satisfy his or her ultimate burden of persuasion by showing that the employer's articulated reasons are unworthy of belief or a mere pretext for what was in fact a discriminatory purpose. *Texas Dep't of Comm'ty Affairs v. Burdine*, 450 U.S. 248, 252-53, 256, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981); *Grimwood*, 110 Wn.2d at 363-64 (citing with approval *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979)).

While an instruction concerning these shifting burdens of proof was approved in *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 448, 810 P.2d 952, 815 P.2d 812 (1991), *review denied*, 118 Wn.2d 1008 (1992), that decision was limited to approving the instruction and did not address the question of whether such an instruction is required.[12] A number of federal courts, however, have held that the *McDonnell Douglas* burden of proof formulation was not intended as a prospective jury charge. *E.g.*, *Loeb*, 600 F.2d at 1016; *see*

---

[11]To make out a prima facie case of age discrimination, the plaintiff must show that the employee: (1) was within the statutorily protected age group; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by a younger person. *Douchette v. Bethel Sch. Dist. 403*, 117 Wn.2d 805, 814, 818 P.2d 1362 (1991).

[12]Simpson Paper's reliance on *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 769 P.2d 298 (1989) for its argument that a shifting burden instruction is required is also misplaced. At issue was an instruction that shifted the burden to the employer to prove that the plaintiff was terminated for just cause. Thus, the error lay in the improper shifting of the burden to the employer. The question of whether such an instruction was otherwise required was not addressed.

*also Hatfield v. Columbia Fed. Sav. Bank*, 57 Wn. App. 876, 880, 790 P.2d 1258 (1990) (the *McDonnell Douglas* formulation is most useful in the context of a motion for summary judgment). Once all the evidence has been presented, the burden of proof formulation "drops from the case" and the focus of the factfinder is properly on the ultimate issue of discrimination. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 75 L. Ed. 2d 403, 103 S. Ct. 1478 (1983). The ultimate issue in an age discrimination case is whether age was a determining factor in the decision of an employer to terminate an employee. *Hatfield*, 57 Wn. App. at 882. The burden of persuasion, of course, remains on the employee. *Grimwood*, 110 Wn.2d at 362-64.

We agree with the First Circuit's reasoning in *Loeb* which foreshadowed the Supreme Court's conclusion 4 years later in *Aikens*:

> We cannot quarrel with the fact that the subtleties of *McDonnell Douglas* are confusing . . ., the "prima facie case," "burden of persuasion," and the shifting "burden of production" have caused considerable difficulty for judges of all levels. *McDonnell Douglas* was not written as a prospective jury charge; to read its technical aspects to a jury, as was done here, will add little to the juror's understanding of the case and, even worse, may lead jurors to abandon their own judgment and to seize upon poorly understood legalisms to decide the ultimate question of discrimination. Since the advantages of trial by jury lie in utilization of the jurors' common sense, we would have serious reservations about using *McDonnell Douglas* if doing so meant engulfing a lay jury in the legal niceties discussed in this opinion.

*Loeb*, 600 F.2d at 1016. Issues of the plaintiff's prima facie case, the employer's burden to rebut with a legitimate non-discriminatory reason, and the employee's showing of pretext are irrelevant once all the evidence is in. *Aikens*, 460 U.S. at 714-15; *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1344 (9th Cir. 1987), *cert. denied*, 484 U.S. 1047 (1988). It creates needless confusion to instruct the jury on these burdens. At this juncture, their job is to determine whether the plaintiff has shown that, but for his age, he would not have been fired. The trial court properly restricted the instructions to this issue.

Simpson Paper also argues that the language of instruction 12,[13] taken together with instruction 11,[14] effectively required Simpson Paper to prove lack of discrimination. Instructions 11 and 12, however, must be read in conjunction with the other instructions which were given.[15] Significantly, instruction 13 instructs the jury that, in order to return a verdict for the plaintiff on his claim of age discrimination, it must conclude that, even if other considerations were involved in the decision to terminate him, he would not have been discharged but for his age. This

---

[13]Instruction 12 reads:

"In determining the question of whether or not plaintiff was performing his job in a satisfactory manner, you are instructed that the plaintiff need not show perfect performance. He need only show that his performance was of sufficient quality to merit continued employment, thereby raising an inference that some other factor was involved in the decision to discharge him."

[14]Instruction 11 reads:

"Measuring satisfactory performance of an employee involves the consideration of many tangible and intangible attributes, the latter including personality, initiative, ability to function as part of the management team and to motivate employees, and the ability to conceptualize and effectuate management style, goals and legitimate expectations which may change from time to time."

[15]Instruction 10 reads:

"The Washington Law Against Discrimination prevents an employer from discharging an employee because of his age. Age, though not the only reason for discharge, must be the determining factor for discharge. So long as age is not the determining factor, an employer may discharge an employee for any reason, fair or unfair, or no reason at all."

Instruction 13 reads:

"In order to establish liability for unlawful age discrimination arising out of plaintiff's termination, the plaintiff bears the burden of proving by a preponderance of the evidence each of the following elements:

"1. He was terminated;

"2. He was between 40 and 70 years of age at the time of his termination;

"3. He was performing his job in a satisfactory manner at the time he was terminated;

"4. His duties were assumed by a younger person with qualifications similar to or less than his own; and

"5. Age was the determining reason for his discharge.

"In deciding whether plaintiff's age was the determining factor in the decision by defendants to terminate plaintiff's employment, you need not find that his age was the sole motivating factor. However, it is not enough for you to find that plaintiff's age entered into the defendants' decision. In order for you to

instruction gave Simpson Paper ample opportunity to argue that, even if age was a factor, Burnside would have still been discharged for legitimate reasons. The jury could only have concluded that Burnside had been discriminated against on the instructions given if it found that Simpson Paper's reason for firing him was pretextual or simply not credible. *Burdine*, 450 U.S. at 256. The instructions given properly placed the burden of proof on the plaintiff and allowed both sides to argue their theory of the case.

## V

### SUFFICIENCY OF THE EVIDENCE

Simpson Paper also contends that the jury's finding of age discrimination cannot be upheld because it was not supported by substantial evidence. "Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." *Robinson v. Safeway Stores, Inc.*, 113 Wn.2d 154, 157-58, 776 P.2d 676 (1989) (quoting *Holland v. Boeing Co.*, 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978)). Where there is conflicting evidence, it is not the role of the appellate court to weigh and evaluate the evidence. "The appellate function should, and does, begin and end with ascertaining whether or not there is substantial evidence supporting the facts as found." *Bland v. Mentor*, 63 Wn.2d 150, 154, 385 P.2d 727 (1963).

Burnside testified that he was the oldest person in Simpson Paper's head office.[16] The jury also had before it evidence that Burnside was replaced by someone just slightly over half his age with no experience in marketing wood pulp

---

find that plaintiff's age was the determining factor, you must find that but for his age, plaintiff would not have been discharged.

"If you find that the plaintiff has established all of these elements, then plaintiff has proven age discrimination, and your verdict must be for plaintiff on the issue of age discrimination.

"If you find that plaintiff has failed to establish all of these elements, then plaintiff has not proven age discrimination, and your verdict must be for defendants on the issue of age discrimination."

[16]In his deposition, Burnside testified that facetious remarks were made by Fannon and others in the head office referring to him as the "old man of the office".

internationally, and that, by firing him, Simpson Paper cut its salary and fringe benefit budget for the pulp department almost in half. While the jury heard extensive testimony as to Fannon's reasons for firing Burnside, a factfinder can reject an employer's purportedly legitimate nondiscriminatory reason on the ground that it was unworthy of credence, as well as on the basis that it was simply a pretext for discrimination. *Burdine*, 450 U.S. at 256. We will not second guess the jury's credibility determinations. The evidence here, viewed in the light most favorable to the prevailing party, was sufficient to support the jury's verdict.

## VI
### BREACH OF IMPLIED CONTRACT

■ Simpson Paper next argues that Burnside's breach of implied contract claim was barred as a matter of law. Promises of specific treatment in specific situations found in an employee manual or handbook issued by an employer to his or her employees may, in appropriate situations, obligate the employer to act in accord with those promises, where the employee has "justifiably relied" thereon. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 233, 685 P.2d 1081 (1984). While courts may be able to conclude as a matter of law in some cases that particular language did or did not constitute a promise of specific treatment in specific circumstances, *e.g.*, *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613-14, 762 P.2d 1143 (1988), questions about whether statements in employee manuals amount to promises of specific treatment in specific circumstances, whether an employee justifiably relied on them, and whether any such promise was breached generally present material issues of fact. *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 522, 826 P.2d 664 (1992).

Simpson Paper argues, however, that because the Simpson Management Guide was a supervisory manual, as a matter of law it cannot form the basis for a breach of implied contract claim. In so arguing, Simpson Paper relies on *Adler v. Ryder Truck Rental, Inc.*, 53 Wn. App. 33, 765 P.2d 910 (1988), *review denied*, 112 Wn.2d 1013 (1989) and

*Hatfield.* Both cases are distinguishable, and neither case stands for the proposition that a supervisory manual can never, as a matter of law, form the basis for a breach of implied contract claim.

In *Adler*, the court concluded that it could not rely on a company personnel manual for its reversal of a directed verdict against the plaintiff, observing that it was written specifically for supervisory personnel and contained an explicit disclaimer that its provisions were not binding on any employment contract. 53 Wn. App. at 36. Further, although Adler was promoted to a supervisory position, the facts do not indicate that Adler was aware of or relied on the supervisor's manual. Rather, he was informed of company policy concerning termination orally and by a warning notice. 53 Wn. App. at 34-35. Similarly, in *Hatfield*, the court concluded that because there was no evidence that the provisions of a supervisors' manual were made known to employees, those provisions could not be construed as promises. 57 Wn. App. at 884.

■ Here, in contrast, there is no question that the language of the employment manual made specific promises regarding the termination process and that there was no disclaimer.[17] Burnside testified that his copy of the guide was kept in an open bookcase where he and other department members could refer to it at any time. He also testified that he was instructed to follow the guide on two

---

[17]With respect to the termination of salaried employees, the Simpson Management Guide provided:

"1.01 As a matter of fair and equitable personnel practice, all terminations will be handled in a clearly defined and uniform manner whether initiated by the employee or by the company.

"1.02 Terminations will be classified as:

". . . .

"(b) Releases, if initiated by the company for cause.

". . . .

"2.02 Release will constitute an immediate termination of employment, and may be considered in instances such as misconduct, failure to return without notice on schedule from an absence or temporary layoff, or incompetence or otherwise unsatisfactory work performance, if previous warnings have been given and employee has had the opportunity to resign."

occasions when he was forced to consider disciplining or possibly terminating two employees who worked under him, and that it was his understanding that the guide was to be followed should he be subject to discipline or termination. The trial court correctly concluded that the guide could form the basis for an implied contract. The issue of justifiable reliance was put to the jury, which found in Burnside's favor.

## VII
### MITIGATION ISSUE

Simpson Paper further challenges the trial court's partial grant of Burnside's motion for a directed verdict below and its instructions to the jury on the issue of mitigation. On appeal of a motion for a directed verdict, the reviewing court views the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Thornton v. Annest*, 19 Wn. App. 174, 175, 574 P.2d 1199 (1978).

Neither party cites any Washington cases dealing directly with the issue of mitigation of damages in the context of an age discrimination claim, and we have found none. Federal case law, however, places the burden of proving a failure to mitigate damages in an employment discrimination suit on the defendant.[18] *Cassino*, 817 F.2d at 1345; *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978). To satisfy its burden, the defendant must show that there were suitable positions available and that the plaintiff failed to use reasonable care and diligence in seeking them. *Cassino*, 817 F.2d at 1345; *Sias*, 588 F.2d at 696. Self-employment does not necessarily indicate a lack of reasonable diligence, nor is a discharged employee required to seek employment similar to the work he performed for his previous employer. *Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 148-49 (2d Cir. 1968); *Hansard v. Pepsi-Cola Metro Bottling Co.*, 865 F.2d 1461, 1468 (5th Cir.), *cert. denied*, 493 U.S. 842 (1989). The reasonableness of the

---

[18]See footnote 9.

effort to find substantially equivalent employment should be evaluated in light of the characteristics of the individual and the job market. *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983), *cert. denied*, 466 U.S. 950 (1984). Success is not required, nor is the failure to earn a substantial income dispositive of the question of whether a terminated employee exercised reasonable diligence. 714 F.2d at 624.

The trial court here found that a request for reinstatement by Burnside would have been futile, and that the fact that Burnside was nearing retirement age made both retraining and finding suitable alternative employment unrealistic. While the court found that Burnside did not make an ongoing, concerted effort to find comparable employment, it also observed that there was no evidence that such employment was in fact available. Burnside testified that there were only three equivalent positions as pulp marketing managers available in the Western United States and Canada, and Simpson Paper presented no evidence to the contrary. The court adopted the jury's finding that Burnside had exercised reasonable diligence to mitigate his damages by accepting a lesser paying and lower status job with Evergreen Consulting. Even viewed in the light most favorable to Simpson Paper, the court's findings were supported by substantial evidence.[19]

■■ ■■ Finally, Simpson Paper also challenges the amount of front and back pay awarded Burnside on the basis that those awards are outside the range of substantial evidence. Simpson Paper concedes, however, that the amounts awarded were consistent with the figures used by Burnside's expert, Dr. Dowdle. The jury was entitled to accept his testimony, and those amounts are therefore sup-

---

[19]By the same token, the trial court also did not err in refusing to give an instruction regarding any willful failure to mitigate. To show a willful loss of earnings, an employee must refuse a job substantially equivalent to the one he was denied. *See Ford Motor Co. v. EEOC*, 458 U.S. 219, 231-32, 73 L. Ed. 2d 721, 102 S. Ct. 3057 (1982). A court is not required to give a jury instruction where there is insufficient evidence to support it. *Koker v. Armstrong Cork, Inc.*, 60 Wn. App. 466, 482, 804 P.2d 659, *review denied*, 117 Wn.2d 1006 (1991).

ported by the evidence. The appellate court will not disturb a jury's verdict on damages if it is within the range of the evidence. *Alger v. Mukilteo*, 107 Wn.2d 541, 551, 730 P.2d 1333 (1987). Once discrimination has been found, any doubts concerning back pay are to be resolved against the employer. *Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 127, 615 P.2d 1279 (1980).

## VIII
### PREJUDGMENT INTEREST

■ Simpson Paper next challenges the trial court's award of prejudgment interest. RCW 49.60.030(2) permits anyone making a claim under the act to pursue any "remedy authorized by [RCW 49.60] or the United States Civil Rights Act of 1964". The Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(g), authorizes the award of prejudgment interest in conjunction with an award of back pay in suits against private employers. *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 448, 810 P.2d 952, 815 P.2d 812 (1991) (citing *Loeffler v. Frank*, 486 U.S. 549, 100 L. Ed. 2d 549, 108 S. Ct. 1965 (1988)), *review denied*, 118 Wn.2d 1008 (1992). Washington common law, however, provides that prejudgment interest can be awarded only in those cases where the claim is for a fixed sum or the evidence provides a basis for computing the recovery with exactness, without reliance on opinion or discretion. *Pannell*, 61 Wn. App. at 449. An unliquidated claim is one

> "where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed."

(Italics omitted.) *Hansen v. Rothaus*, 107 Wn.2d 468, 473, 730 P.2d 662 (1986) (quoting *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 33, 442 P.2d 621 (1968) (quoting C. McCormick, *Damages* § 54 (1935))). An award of prejudgment interest is reviewed for abuse of the trial court's discretion. *Pannell*, 61 Wn. App. at 449.

■ Here, the trial court's award of prejudgment interest was based on the salary and fringe benefits being paid to Burnside at the time of his termination. In calculating its award, the court specifically excluded any pay raises or bonuses that Burnside might have received had he not been terminated. Because the amount of both salary and fringe benefits Burnside was receiving at the time he was terminated can be determined "with exactness" and "without reliance on opinion or discretion", the amount is liquidated. *Pannell*, 61 Wn. App. at 449. The trial court therefore did not err in awarding prejudgment interest on that amount.

## IX
### ATTORNEY FEES

■ Finally, Simpson Paper argues that the trial court abused its discretion in applying a multiplier to a portion of its attorney fee award. A trial court's determination as to what constitutes reasonable attorney fees will not be reversed absent an abuse of discretion. *Allard v. First Interstate Bank of Wash.*, 112 Wn.2d 145, 148, 768 P.2d 998, 773 P.2d 420 (1989). Attorney fees here were calculated by using the lodestar formula adopted in *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 675 P.2d 193 (1983),[20] and applying a 1.3 multiplier to the lodestar amount for one of plaintiff's attorneys. A court may make an upward adjustment to the lodestar amount to compensate attorneys for the risk "that the litigation would be unsuccessful and that no fee would be obtained' ", or where the quality of services rendered was superior. *Bowers*, 100 Wn.2d at 598-99 (quoting *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C. Cir. 1980)). Such an adjustment is also within the trial court's discretion. 100 Wn.2d at 599.

The trial court here applied a multiplier of 1.3 to the fees of Jeffrey Needle based on its conclusion, after 4 weeks of trial, that his services were "superior to that which one reasonably should expect in light of the hourly rates charged." The trial

---

[20]The lodestar formula multiplies the reasonable number of hours expended by a reasonable hourly rate. 100 Wn.2d at 597.

court also noted the degree of risk associated with bringing an age discrimination claim, as well as numerous other factors contributing to the difficulty and complexity of this case. The trial court was in the best position to evaluate the quality of Mr. Needle's services. Given the jurisdictional and choice of law issues presented and the largely circumstantial nature of the evidence in this case, there is no basis for concluding that it abused its discretion in making its award of attorney fees or in applying the multiplier.

RAP 18.1 authorizes an award of costs and attorney fees on appeal when the right to recover fees is provided by statute. RCW 49.60.030(2) provides for recovery of costs and fees at both the trial and appellate levels. *Pannell*, 61 Wn. App. at 449-50. We therefore award Burnside his fees on appeal, provided he complies with the requirements of RAP 18.1.

## X
### EMOTIONAL DISTRESS ISSUE

Burnside argues that the trial court erred in ruling that proof of objective symptoms was required and therefore granting a directed verdict on the issue of emotional distress. While the trial court may have erred in so holding,[21] because Burnside stated at oral argument that it was his intention to raise this issue only if the case was reversed and remanded for a new trial, we do not reach it.

Affirmed.

WEBSTER, A.C.J., and PEKELIS, J., concur.

Review granted at 120 Wn.2d 1019 (1993).

---

[21]*Nord v. Shoreline Sav. Ass'n*, 116 Wn.2d 477, 485, 805 P.2d 800 (1991) (objective symptoms need be shown only where a claim for negligent infliction of emotional distress is asserted or where the plaintiff is seeking to establish the elements of the intentional tort of outrage). Burnside's claim was neither a claim for negligent infliction of emotional distress nor a claim seeking recovery based on the tort of outrage.